THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN WOODALL, Defendant-Appellant.

Second District (1st Division)    No. 75-287

Opinion filed December 30, 1976.

1004

Edward M. Genson, Theodore M. Becker, and J. Samuel Tenenbaum, all of Chicago, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Charles D. Sheehy, Jr., and Phyllis J. Perko, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant pled guilty to two separate indictments charging delivery of controlled substances on May 12, 1972, in violation of section 401(c) of the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1401(c)). On November 23, 1973, he was placed on a 3-year term of probation. On August 9, 1974, he was arrested and charged with the offense of unlawful distribution of a controlled substance. On August 22, 1974, a petition for revocation of defendant's probation was filed, stating that the defendant was arrested on August 9, 1974, by agents of the Federal Government and charged with unlawful distribution and dispensing of a controlled substance in violation of the Controlled Substances Act (21 U.S.C. §841(a)(1) (1970)). After two continuances requested by the defendant, on the date of the hearing on the revocation of probation the State moved to amend the petition for violation of probation charging the defendant did "knowingly and intentionally possess with intent to distribute a Controlled Substance." On January 24, 1975, the trial court revoked defendant's probation and subsequently sentenced him to a term of 3 years 3 months to 9 years 9 months in the State Penitentiary.

In this appeal the defendant has urged five grounds for reversal of his sentence. The first argument is that the testimony of the Federal agents of the Department of Justice was incredible and constituted perjury. Secondly, the defendant urges that, even when viewed in the light most favorable to the State and measured by a preponderance of the evidence standard, the totality of the evidence fails to establish his possession of the controlled substance. Thusly, defendant contends it does not establish violation of the Federal law. The third argument is that the defendant was denied due process and the right of privacy by the refusal of the court to suppress the evidence seized, and statements made, in that the method of procurement of the same reflected serious violations of the defendant's

rights under the fourth, fifth and sixth amendments to the United States Constitution. The fourth contention of defendant is that the court erred in allowing the State to amend the petition for revocation at the time of the hearing and further erred by refusing the defendant a continuance pending the outcome of the Federal charge upon which the revocation was based. The defendant's last argument is that the sentence imposed is in error.

Briefly stated, the evidence is as follows. On August 9, 1974, various special agents with the Drug Enforcement Administration of the Federal Government transacted a purchase of some 14,000 units of mescaline from one Mitchell Mathena using $15,000 in prerecorded money. He and Carol Schumann were arrested. Later that day and in the early evening the Federal agents set up a surveillance of a residence on Highland Avenue in Elgin. With them at the scene of this surveillance were Mathena, the girl arrested with him and a police officer of the city of Elgin. It appears that Mathena was cooperating with the agents after his arrest. During this period of surveillance Mathena placed telephone calls to this Highland Avenue residence. The defendant was observed by various of the agents leaving the Highland Avenue address carrying a large bag in his arms. He and JoAnn Burris (now his wife) entered a Volkswagon van and drove to 525 Addison Street and to 515 Adams Street, both addresses in Elgin. Defendant was observed carrying a bag into one of these residences and returning empty handed. The defendant left the Adams Street address and he was shortly thereafter arrested traveling eastbound on Route 68. Five of the Federal agents were at the scene of the arrest. Conflicting evidence was admitted as to the exact time defendant was advised of his rights under *Miranda.* However, there appears to be no conflict in the testimony as to the fact that defendant volunteered the statement "the bag of _____ is in the back [of the van]" after he had exited the van. One of the agents entered the van and removed a large brown paper bag containing small, round, pink tablets. It was stipulated at the probation revocation hearing that the bag taken from the van contained 52,000 lysergic acid diethylamide (LSD) tablets.

■■ We consider first the alleged perjurious testimony of the Federal agents. The basis for the alleged perjury is that Federal agents Weinstein and Labik both testified that they each used a pair of binoculars to observe the Highland Avenue house on August 9, 1974. These statements were challenged by the defendant when he put Officer Shaver, an Elgin police officer, on the stand who testified that he did not see Agent Weinstein or Agent Labik use binoculars. However, this surveillance extended from a period of 3:30 p.m. to approximately 7 p.m. Shaver was in Weinstein's vehicle and Labik was parked in another vehicle. Another

alleged discrepancy of testimony is that Agents Weinstein and Labik did not tell Agent Morley that they saw the defendant leave the Highland Avenue address with a paper bag. Additionally, defendant contends, by the testimony of Celeste Burris, now his mother-in-law, that it was "just barely possible to see someone walk from the house to a car in the driveway" because of the trees. Lastly, defendant contends that the testimony of the agents as to the giving of the *Miranda* warnings constitutes perjury. There is no question but the *Miranda* warnings were given to the defendant. As a matter of fact, four officers so testified. We do not find that any of the above constitutes perjury on the part of the Federal officers. Inconsistencies in the testimony of some five or six special agents stationed at different observation points as to what transpired in a period extending for some four hours are to be expected. The testimony is not contradictory and the inconsistency, if any, is that of omission rather than commission.

The next contention of the defendant, in substance, is that the evidence failed to establish that the defendant was in possession of the controlled substance. For this argument the defendant has cited various cases dealing with constructive and/or joint possession. We do not find those cases on point in the factual situation before us. As the court stated in *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372, in considering the question of possession and knowledge of narcotics:

> "Whether there is possession and whether there is knowledge are both questions of fact to be determined by the jury, or by the court where a jury is waived, and, as in the case of other factual determinations committed to a jury in criminal proceedings, its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt."

In the case before us the defendant was observed by the Federal agents leaving the Highland Avenue residence with a large paper bag which he placed in the van. While it is true that the defendant introduced evidence from one Brian Graham that the defendant did not carry any package into Graham's residence, one of the agents testified that defendant did carry a package in and that he returned from the residence empty handed. Further, at the time of his arrest the defendant specifically stated, prior to the giving of the *Miranda* warnings, that "the bag of _____ is in the back." Further, after he had been given the warnings, the defendant gave further statements admitting his purchase and possession of drugs and a prior sale to Mitchell Mathena. As defendant points out, this being a probation revocation hearing, it is only necessary that the State prove by a preponderance of the evidence the possession of the LSD. We feel the State has met its burden.

■■ We come then to the closely allied argument of the defendant that he was denied due process by the court's refusal to suppress the evidence seized and the statements made by the defendant at the time of his arrest. We do not agree. The defendant vigorously argues that his constitutional rights under the fourth, fifth and sixth amendments were violated by the Federal agents in his arrest and subsequent search. Actually, there appears to be no serious controversy that at the time of the defendant's arrest, and prior to his being given the *Miranda* warnings, he made the statement that "the bag of _____ is in the back." At least four officers testified that the *Miranda* warnings were, in fact, given to the defendant at the time of his arrest. Additionally, it is to be noted that as the defendant was being transported to the city of Chicago by the Federal agents, he made various statements relative to possession of drugs and a prior sale to Mathena. The question, therefore before us, on this issue, is whether or not the exclusionary rule is applicable to probation revocation proceedings in the absence of police harrassment. There is obviously no police harrassment here; the defendant was merely arrested and, at the time of his arrest, he volunteered the statement as to where the drugs were. In the recent case of *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529, the Supreme Court considered in detail the question of whether the exclusionary rule applies in revocation of probation proceedings. The court observed that the overwhelming majority of reported cases in the United States have held that the fourth amendment's exclusionary rule is not applicable to probation revocation proceedings or in proceedings to revoke parole. Our Supreme Court cited numerous cases from the various courts of the United States and rejected the argument that the exclusionary rule should apply in probation revocation proceedings. The court stated:

> "The grant of probation was imposed upon defendant in the present case after the trial court's consideration that he was not likely to commit another offense; that his rehabilitation would be advanced by probation; and, that the public interest would be served by such disposition.
> * * *
> During a revocation hearing the interests of society must be amply considered. [Citations.] Merely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation." (62 Ill. 2d 200, 206, 340 N.E.2d 529, 532.)

We therefore conclude that in the instant case the exclusionary rule was not applicable. Nor are we convinced that were this a trial proceeding to

determine defendant's guilt, that the exclusionary rule would apply under the facts set forth in the record before us.

■■ Defendant contends the trial court deprived him of his constitutional rights by refusing to grant a continuance after the petition for revocation was amended and that the court erred in refusing to grant him a continuance pending the outcome of the Federal charge upon which the revocation petition was based. As indicated above, the first petition alleged the defendant was arrested for distribution and dispensing a controlled substance while the amended petition alleged that the defendant was arrested and committed the offense of possession with intent to distribute a controlled substance. Defendant urges that he was surprised by the amendment on the day in question and he was not prepared to defend the amended charge. It is difficult indeed to see how the defendant could be prepared to answer the charge of distributing and dispensing a controlled substance and not be able to defend the lesser included offense of possession with intent to distribute the same material. The State was allowed to put on evidence based upon the petition as amended and the court thereupon continued the hearing for a period of 24 days before the defense presented its evidence. It can thus be seen that the defendant was given ample time to prepare and submit the defense to the charge. However, defendant asserts that he was deprived of his right to cross-examine and impeach on a charge of which he had no notice. Again it is difficult to see how one could be prepared to defend a charge of dispensing and distributing narcotics and yet not be prepared to defend a charge of possession of the very same narcotics. In *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230, the defendant was originally charged with murder and voluntary manslaughter. The original charge was nolle prossed and he was subsequently indicted for murder and involuntary manslaughter. The defendant there claimed surprise by reason of the State's subsequent indictment. The Supreme Court pointed out:

> " * * * the defendant was at all times subject to a conviction for involuntary manslaughter, even under the original indictment. Therefore, he cannot claim surprise in suddenly having to defend against a new and distinct charge." 50 Ill. 2d 390, 395, 280 N.E.2d 230, 233.

■■ The second part of defendant's argument in this regard is that it was clear error for the court to deny a continuance to the defendant pending the outcome of the Federal charge against him. We do not agree. It has repeatedly been stated that a defendant has no right to have probation revocation proceedings delayed until the outcome of the trial on the criminal offense for which the probation revocation petition was

filed. (*People v. Smith* (1969), 105 Ill. App. 2d 14, 245 N.E.2d 13.) The defendant further contends that the refusal of the court to grant a continuance of his revocation hearing until the disposition of Federal charges prevented him from testifying at the revocation hearing. This argument has been presented in numerous cases in various jurisdictions and the courts have uniformly held that there is no compromise of defendant's privilege against self-incrimination by the holding of a probation revocation proceeding prior to trial of the criminal charges on which the revocation is based. *People v. Coleman*, 13 Cal. 3d 867, 533 P.2d 1024, 120 Cal. Rptr. 384 (1975); *State v. Kartman*, 192 Neb. 803, 224 N.W.2d 753 (1975); *State v. Ryan*, ___ Mont. ___, 533 P.2d 1076, 1078 (1975); *People v. Carr*, 185 Colo. 293, 524 P.2d 301 (1974); *Flint v. Mullen*, 499 F.2d 100 (1st Cir. 1974); *Flint v. Howard*, 291 A.2d 625 (R.I. 1972), *cert. denied*, 409 U.S. 1078, 34 L.Ed. 2d 667, 93 S. Ct. 694 (1972); *Gonsalves v. Howard*, 113 R.I. 544, 324 A.2d 338 (1974); *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); *Borges v. State*, 249 So. 2d 513 (Fla. App. 1971); *United States v. Markovich*, 348 F.2d 238 (2d Cir. 1965); *Jianole v. United States*, 58 F.2d 115 (8th Cir. 1932).

While we find no Illinois case specifically on this issue, we note that in *People v. Latimer* (1966), 35 Ill. 2d 178, 181, 220 N.E.2d 314, 316, our Supreme Court stated that:

"The granting of a continuance to permit preparation for a case is a matter resting within the sound judicial discretion of the trial court, and we will not disturb the court's ruling on review unless it is shown that the discretion has been abused. [Citations.] A conviction will not be reversed unless it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights."

In the case before us we do not find the trial court abused its discretion in refusing to grant a continuance on the two grounds hereinabove set forth. It is to be specifically noted, of course, that the trial court did in fact grant a continuance, allowing the defense to present its evidence some 24 days after the State's evidence had been presented and heard by the trial court. We find no abuse of discretion.

■■ The last contention of the defendant is that the sentence imposed is in error. He points out first that he chose to be sentenced under the law in effect at the time of the commission of the original offense which was prior to the adoption of the Unified Code of Corrections (see Ill. Rev. Stat. 1971, ch. 56½, par. 1401(c)). He argues that he was also entitled to credit on his sentence attributable to the good time he had spent on probation. The defendant is correct. He may elect to be sentenced under the law as it existed prior to the effective date of the Unified Code of

Corrections, to-wit, January 1, 1973, and, likewise, he may choose to apply those provisions of the Unified Code which are beneficial to him. As we stated in *People v. Fitzgerald* (1975), 25 Ill. App. 3d 973, 976, 324 N.E.2d 13, 15:

> "The purpose of section 8—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4) is to allow defendants in criminal cases to avail themselves of the sentencing *benefits* of the Code provided their cases have not reached a stage of final adjudication on the date that the Code was adopted (emphasis ours). Where the sentencing provision provides no benefit but rather provides a detriment, the provision does not apply [citation]."

In the case before us section 5—6—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1005—6—4(h)) as originally enacted, provided:

> "Resentencing after revocation of probation or of conditional discharge shall be under Article 4. Time served on probation or conditional discharge shall be credited against a sentence of imprisonment or periodic imprisonment."

This section was subsequently amended by the legislature, on November 14, 1973, to provide that the court could order otherwise if deemed desirable. As to defendant's contention that he should receive credit for time served on probation, we agree. This issue was determined by this court in *People v. Moore* (1976), 37 Ill. App. 3d 592, 597-98, 346 N.E.2d 97, 101-02, where we considered the interpretation of section 5—6—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h)):

> "This section provides 'time served on probation or conditional discharge shall be credited by the court against a sentence of imprisonment or periodic imprisonment unless the court orders otherwise.' The effective date of this act quoted, as amended, was July 1, 1974. (See *People v. Kaminski* (1975), 30 Ill. App. 3d 180, 332 N.E.2d 182.) The court did not order that the time served on probation should not be credited to the defendant's sentence. Defendant was sentenced to a minimum of 2½ years; he therefore had credit against that sentence of 2 years and 3 months * * *."

See also *People v. Hull* (1976), 36 Ill. App. 3d 152, 342 N.E.2d 279; *People v. Davis* (1976), 36 Ill. App. 3d 904, 344 N.E.2d 736.

■■ Having decided that the provisions of the Unified Code of Corrections are applicable, with particular reference to benefits which may be received thereunder, we consider the next contention of the defendant, namely, that the minimum sentence imposed should not

exceed one-third of the maximum. As indicated above the defendant was sentenced to 3 years 3 months to 9 years 9 months. The law in effect at the time defendant committed the original offense provided for a 1-10 year sentence and the Unified Code likewise provides for a 1-10 year sentence. However, before the defendant pled guilty, the court specifically stated to the defendant that upon a guilty plea he would subject himself to a possible sentence of not to exceed 8 years. In *People v. Wenger* (1976), 42 Ill. App. 3d 608, 356 N.E.2d 432, we find an almost identical factual situation in this regard. In *Wenger* the trial court at the time of defendant's conviction stated that the court could sentence defendant to no less than 1 nor more than 3 years in the penitentiary. Defendant was placed on probation and later, when his probation was revoked, the court sentenced defendant to 32 to 96 months in the penitentiary. The appellate court found the sentence was fundamentally unfair and reversed and remanded for resentencing. (See also *People v. Jackson* (1973), 13 Ill. App. 3d 232, 300 N.E.2d 557.) Under the circumstances, in the case before us, obviously the maximum sentence is 8 years. The question before us is whether the minimum should be one-third of the maximum. Inasmuch as we have found that the provisions of the Unified Code are applicable, it therefore follows that the defendant's minimum sentence should be reduced to 2 years 8 months, which is one-third of the maximum imposed. We therefore remand this cause for resentencing and direct that the sentence imposed shall be a minimum of 2 years 8 months to a maximum of 8 years. We further direct the trial court to determine the quantum of time served on probation by defendant and that he be credited for the same.

Judgment affirmed: cause remanded for resentencing.

SEIDENFELD and RECHENMACHER, JJ., concur.