THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES W. PETERSON, Defendant-Appellant.

Second District   No. 75-481

Opinion filed July 21, 1977.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

William Cowlin, State's Attorney, of Woodstock (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

On April 4, 1975, a probation revocation hearing was held for Charles W. Peterson, defendant-appellant (hereinafter defendant). The defendant was on probation from a 1972 burglary conviction. The findings of the hearing were that the defendant had violated his probation by leaving Illinois without court permission and by committing the

criminal offenses of burglary, theft and unlawful possession of a hypodermic syringe.

The trial court made its findings based upon the following facts:

On May 30, 1973, the defendant was stopped by a member of the Crystal Lake Police Department for a traffic violation. While the defendant was talking to the officer, his passenger, a 16-year-old boy, began shouting obscenities at the officer. The officer asked the passenger to step out of the car. The passenger did so, but continued to be abusive towards the officer. After determining the passenger was under age, the officer arrested him for curfew violation and placed him in the squad car. Returning to the defendant's car, the officer asked permission to search the front seat of it. The defendant consented.

The search revealed a hypodermic syringe hidden under the passenger side of the front seat. When the officer questioned the defendant about the syringe, he denied any knowledge of it and has continued to do so.

After ticketing the defendant for a traffic violation, the officer let the defendant go. No action concerning the syringe was taken at that time. However, on June 11, 1973, a warrant was issued for the defendant's arrest, charging him with the unlawful possession of a hypodermic syringe.

On cross-examination at the probation revocation hearing, the officer testified he requested permission to search the front seat of the car in an effort to find evidence to explain the "radical" behavior of the passenger.

At approximately 12:10 a.m. on June 22, 1973, the defendant was arrested on the above warrant. The arresting officers took the defendant into custody and transported him to the Crystal Lake Police Department. There he was given his *Miranda* warnings and was questioned by two officers in an interrogation room. After one or two preliminary questions about the syringe, the officers began questioning the defendant about the June 10, 1973, burglary and theft from a Crystal Lake gasoline station.

This line of questioning was prompted by a tip that one of the officers had received from an unnamed informant. The informant said that the defendant and two others had committed the burglary and theft. The two accomplices were known to the informant as Mike and Eddie.

Initially, the defendant denied any participation in the crime. He claimed he had been in Chicago with his girlfriend on the night in question. When asked who his girlfriend was, the defendant refused to answer, saying he did not want to get her involved. The officers, having found the girlfriend's name and address in the defendant's wallet, indicated their intention to have the Chicago police call on the girl to check out the alibi. It was at this time that the defendant confessed to the crime and named Eddie Crittendon as one of his accomplices.

The confession and the testimony of Crittendon were admitted at the revocation hearing over the objections of the defendant. The defendant based his objections on the fact that the confession had previously been suppressed from being used at trial and his contention that the testimony of Crittendon was therefore the "fruit of the poisonous tree." The confession was originally suppressed on the grounds that it was obtained through the use of psychological coercion.

After considering the evidence presented, the trial court revoked the defendant's probation and sentenced him to a term of three to nine years in prison.

It is from the revocation of his probation that the defendant appeals.

First, the defendant contends that the trial court was in error when it allowed his previously suppressed confession to be admitted as evidence at the probation revocation hearing.

The trial court based its decision to admit the confession on *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529, which permitted evidence obtained in violation of the Fourth Amendment to the United States Constitution to be admitted at a probation revocation hearing.

In *Dowery,* the court reasoned that the exclusionary rules applied at trial, because there the protection of the rights of the accused is the prime concern of our system of justice. However, at probation revocation proceedings, the interest of society must be given equal consideration. Therefore, probative and trustworthy evidence obtained in violation of a defendant's constitutional rights may be introduced to insure that society's interest is protected.

■■ The State argues that *Dowery* holds that the exclusionary rule need not be applied at probation revocation hearings. The defendant counters that *Dowery* is limited to cases where Fourth Amendment rights have been violated and does not extend to violations of those rights protected by the Fifth Amendment to the United States Constitution. While both positions have strong and valid arguments in their favor, we hold that *Dowery* has application to cases where there has been a technical violation of an accused's Fifth Amendment rights where the evidence so obtained is otherwise trustworthy.

■■ We must first decide if the evidence in question is trustworthy. Towards that end, for purposes of ruling on defendant's appeal from the revocation of his probation, we have examined the record of the suppression hearing submitted on defendant's motion. Our examination of that record reveals that the defendant's confession was trustworthy. Therefore, it was properly admitted at the revocation hearing.

The confession was suppressed on the grounds that it was psychologically coerced. The only hint of coercion, psychological or physical, found in the record occurred when the two officers questioning

the defendant informed him of their intention to have the Chicago police call on his girlfriend to check out his alibi.

■■ For the defendant's confession to be untrustworthy because of psychological coercion, the defendant must have been "deprived of his free choice to admit, deny or refuse to answer." (*People v. Gunn* (1973), 15 Ill. App. 3d 1050, 1055, 305 N.E.2d 598, 601-02. Also see *Lisenba v. California* (1941), 314 U.S. 219, 86 L. Ed. 166, 62 S. Ct. 280.) The police conduct in the case at hand did not meet this criterion, and hence, the defendant's confession was not obtained through the use of psychological coercion.

The defendant alleged that the testimony of Eddie Crittendon was the fruit of his illegally obtained confession. Inasmuch as we have determined that defendant's confession was trustworthy, it becomes obvious that Crittendon's testimony was also properly admitted at the probation revocation hearing.

Defendant was given leave to file the recent case of *People v. Bell* (1977), 50 Ill. App. 3d 82, as additional authority. In *Bell*, the defendant claims his confession was improperly admitted at his probation revocation hearing. The error he alleged was the State's failure to comply with the material witness rule. The material witness rule requires that the State either produce or explain the absence of all material witnesses to an allegedly involuntary confession. *Bell* properly raised the material witness rule at the probation revocation hearing, but the confession was nonetheless admitted and his probation revoked. On appeal, the Fifth District reversed, holding that due process required the material witness rule to be applied at probation revocation hearings. In so holding, the Fifth District rejected the State's argument that the holding in *Dowery* be extended to cases involving violations to the Fifth and Sixth Amendments to the United States Constitution.

■■ While we agree with the result reached in *Bell*, we do not find its rationale compelling in the instant case because the two cases are clearly distinguishable on their factual bases. In *Bell* the defendant was substantially deprived of his right of confrontation when the State failed to comply with the material witness rule. That failure made the confession patently untrustworthy. The basic purpose of the material witness rule is to protect a defendant's constitutional (U. S. Const., amend. VI) and statutory (section 5—6—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(c))) rights to confront the witnesses against him. The trustworthiness of an allegedly involuntary confession cannot be determined until and unless the defendant is given a full opportunity to exercise his right of confrontation. In *Bell*, the defendant was not given this opportunity. Therefore, the requirement of trustworthiness—the basic criterion of *Dowery*—was not

met and the confession should not have been admitted at the probation revocation hearing. However, in the instant case, we have found the defendant's confession to be trustworthy and, therefore, admissible.

The second issue raised by the defendant is the sufficiency of the evidence used to prove his unlawful possession of the hypodermic syringe.

■■ The State's theory is that because the syringe was found in a car owned and driven by the defendant, constructive possession may be inferred to him. Constructive possession is prima facie evidence of knowledge and possession. Such evidence establishes by a preponderance of the evidence that the defendant was in possession of the syringe.

■■ If contraband is found in premises controlled by a defendant, the requisite knowledge and possession may be inferred to him only if there is an absence of facts and circumstances that could lead to a contrary conclusion. (*People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214.) Such facts and circumstances are present here. The record reveals that the search was instituted in an effort to discover the reason behind the passenger's "radical" behavior, that the defendant consented to the search, and that the syringe was found under the passenger's seat. All these factors combine to cast doubt upon whether or not the defendant had the requisite knowledge to have possession inferred to him. Hence, we do not feel that sufficient evidence was presented to establish by a preponderance of the evidence that the defendant had unlawful possession of the hypodermic syringe.

Thirdly, the defendant contends that the trial court did not consider his leaving Illinois in violation of his probation when it revoked his probation. The defendant bases this contention on a comment by the trial court that leaving Illinois was "a less substantial and crucial breach." We believe this comment was merely a comparison between leaving Illinois and the other violations found by the trial court. Furthermore, since the finding that the defendant participated in a burglary was more than sufficient to justify the revocation of his probation and the sentence imposed, it is of no consequence whether or not the trial court considered the defendant's leaving Illinois when he imposed sentence.

Finally, there is the question of whether or not the trial court credited the defendant the proper number of days against his prison sentence.

Defendant claims he was improperly denied credit for three time periods. First, the 57 days he spent incarcerated in Vail, Oregon, awaiting extradition to Illinois to appear at the probation revocation hearing. The State concedes that *People v. Williams* (1974), 23 Ill. App. 3d 127, 318 N.E.2d 692, and section 5—8—7 of the Unified Code of Corrections (Ill.

Rev. Stat. 1975, ch. 38, par. 1005—8—7) require defendant be give credit for this period of incarceration.

Secondly, defendant claims credit should be given for the 65 days he spent in McHenry County jail on the unlawful possession of a hypodermic syringe charge. This point is also conceded by the State (section 5—8—7(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(c))).

Thirdly, defendant claims credit for the time he served on probation while on the street. The 110 days in question were from March 3 to June 22, 1973.

Defendant argues that it is a denial of due process to arbitrarily deny credit for street time. The only way a reviewing court can determine if credit was arbitrarily denied is to look at the reasons articulated for the denial by the trial court. He further argues that since no such reasons were here articulated, an arbitrary denial must be presumed.

We find this argument to be without merit. See *People v. Bellars* (1976), 38 Ill. App. 3d 350, 347 N.E.2d 209.

■■ However, from January 1, 1973, until July 1, 1974, Illinois law required a defendant, whose probation was revoked, to be given credit against the sentence for all time served on probation. (Section 5—6—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(h)).) Defendant is entitled to the benefit of this intervening statute. *People v. Reese* (1976), 37 Ill. App. 3d 820, 347 N.E.2d 451; *People v. Peach* (1976), 39 Ill. App. 3d 757, 350 N.E.2d 583; *People v. Meyer* (1976), 43 Ill. App. 3d 109, 356 N.E.2d 1303; *People v. Knowles* (1977), 48 Ill. App. 3d 296, 362 N.E.2d 1087.

The revocation of the defendant's probation is affirmed. The cause is remanded to the circuit court of McHenry County with instructions to give the defendant credit against his sentence for the 57 days he spent in Vail, Oregon, awaiting extradition; the 65 days he spent in the McHenry County Jail on the unlawful possession of a hypodermic syringe charge; and the 110 days of probation he served while on the streets.

Affirmed as to revocation of probation and sentence; remanded with directions as to sentence credit.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.