*In re* DOUGLAS McMILLAN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DOUGLAS McMILLAN, Respondent-Appellant.)

Third District   No. 76-369

Opinion filed August 31, 1977.

Robert Agostinelli and Michael S. Pelletier, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal from the Circuit Court of Knox County stems from the revocation of the probation of the respondent, Douglas McMillan. The petition for pobation revocation alleged that on July 21, 1976, the respondent committed the offense of burglary in violation of his probation.

Prior to the hearing on probation revocation, the respondent moved to suppress his confession to the burglary. Although there is no transcript of the proceeding, the parties have submitted a written stipulation as to the testimony elicited at the hearing. During the hearing on the motion to suppress, Edward L. Lindsey, police officer for the city of Abingdon, testified that he arrived at the Abingdon Police Station on the evening of July 27, 1976, at approximately 8:45 p.m., subsequent to the time that the respondent, age 15, and Alfie Stambaugh, a friend of the respondent, had been brought into custody. Officer Lindsey stated that he did not give the respondent his *Miranda* rights, and that he did not personally hear any other officer give the respondent said rights. Officer Lindsey did state, however, that he did hear the respondent ask for an attorney. Officer Lindsey testified that the respondent was given a phone book by which to look up the name of an attorney and to call him, and the respondent could not remember or find the name of any attorney to call. At approximately 10 p.m. on said evening, Officer Lindsey stated that he and another police officer drove the respondent to the Mary Davis Home in Galesburg where they placed the respondent in confinement in an "isolation room." At that time, Officer Lindsey said that he returned to Abingdon. Officer Lindsey testified that he returned to the Mary Davis Home during the late hours of the following morning, July 28, 1976. He said that the respondent was taken from the isolation room and placed in one of the administrative rooms of the Mary Davis Home with him, and it was there that the respondent voluntarily executed the written confession for the crime.

Officer Lindsey testified that he read to the respondent his *Miranda* rights prior to the execution of the written statement, and that he could not recall whether if at that time McMillan had requested the presence of counsel.

Dean Edmonson, also a police officer for the city of Abingdon, testified that he arrived at the Abingdon Police Station a few moments after the respondent had been taken into custody. Officer Edmonson further testified that the respondent, upon being asked questions, responded with requests, two or three in number, for the presence of an attorney. Officer Edmonson stated that he did not give, nor did he hear anyone else give, the respondent the *Miranda* warnings.

Carol McMillan, mother of the respondent, testified that a message had been left at her home earlier that evening of July 27, 1976, stating that her son was being held at the police station. Mrs. McMillan said she arrived at the police station shortly after 9 p.m. Mrs. McMillan further testified that her son requested counsel three or four times during her presence.

Lastly, the respondent testified that on the evening of July 27, 1976, he was a passenger in a car driven by Alfie Stambaugh, and said car was stopped by the Abingdon police at approximately 7 p.m. The respondent said that the police had apparently stopped the automobile to question the driver, Alfie Stambaugh, and the respondent was requested by the police to drive the auto, following the police car with Alfie Stambaugh situated inside of it, to the police station. Shortly after arriving at the police station, the respondent said that Officer Lindsey wanted to talk to him about several stolen CB radios, and break-ins of a grade school and of an American Legion. The respondent further testified that each time he was asked questions concerning said incidents, he requested the presence of counsel. The respondent said that he repeated his request four or five times, and that he was not permitted to obtain an attorney. The respondent also testified that he left the Abingdon Police Station at approximately 10:30 p.m. and was taken to the Mary Davis Home in Galesburg where he was placed in the isolation room. Late the next morning, he was taken from the isolation room and put in another room of the Mary Davis Home with Officer Lindsey. The respondent related to the court that at this time he again requested the presence of counsel and that Officer Lindsey did not recite the *Miranda* warnings. The respondent continued to testify that Officer Lindsey presented to him a two-page voluntary statement form, with instructions to fill in the appropriate blanks on page 1. Although the respondent admitted to placing his initials beside the enumerated rights on page 1, he testified that he did not read paragraphs 1 through 5 nor were said paragraphs read to him. The respondent then stated that Officer Lindsey told him to write a statement

regarding the theft of the CB radios and the break-ins of the grade school and American Legion, which the respondent proceeded to do.

Following arguments of counsel, the trial court denied the motion to suppress. Thereafter, a hearing was held on the petition for probation revocation. As a result, the trial court terminated the respondent's term of probation and entered a dispositional order committing the respondent to the Department of Corrections, Juvenile Division. The respondent appeals.

■■ The only issue presented by this appeal is whether a confession obtained in violation of an individual's "Miranda rights" is admissible into evidence in a probation revocation proceeding. In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court stated the requirement that once an individual in police custody requests the presence of an attorney, the interrogation must cease until an attorney is present. If a confession is obtained from the person in custody before that person has an opportunity to meet with an attorney, that confession is certainly suppressable in a criminal proceeding other than a probation revocation proceeding. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 302 N.E.2d 27; *People v. Washington* (2d Dist. 1976), 41 Ill. App. 3d 475, 354 N.E.2d 501; *People v. Medina* (1st Dist. 1976), 37 Ill. App. 3d 1029, 347 N.E.2d 424; *People v. Parnell* (3d Dist. 1975), 31 Ill. App. 3d 627, 334 N.E.2d 403.) The procedural safeguards established by *Miranda* are also applicable to juvenile proceedings where the charge of delinquency is based on the commission of a criminal offense and the proceedings may result in the minor's loss of freedom. (*People v. Horton* (1st Dist. 1970), 126 Ill. App. 2d 401, 261 N.E.2d 693.) Even though the United States Supreme Court has indicated that, once the person in custody has expressed a desire not to discuss the offense for which he was arrested, the police, after a reasonable interval of time, may conduct interrogation on an unrelated crime following a new recitation of the *Miranda* warnings (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321), Illinois courts have distinguished that situation from cases, as the case at bar, in which the person in custody has requested the presence of counsel and the right to cut off questioning was not "scrupulously honored" because the interrogation was resumed with respect to the same crime and without the presence of an attorney. (*People v. Washington* (2d Dist. 1976), 41 Ill. App. 3d 475, 354 N.E.2d 501. See *People v. Parnell* (3d Dist. 1975), 31 Ill. App. 3d 627, 334 N.E.2d 403.) It is irrelevant that a fresh set of Miranda warnings is given. (*People v. Washington* (2d Dist. 1976), 41 Ill. App. 3d 475, 354 N.E.2d 501.) This court has concluded that:

"[T]he accused has the unqualified right to stop the questioning and consult with an attorney and this request precludes further

questioning until there is in fact the requested consultation. If the police disregard such a request and the interrogation proceeds, any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise." (*People v. Parnell* (3d Dist. 1975), 31 Ill. App. 3d 627, 630, 334 N.E.2d 403, 406.)

Recently, the Illinois Supreme Court has concluded that an in-custody confession by an accused is admissible into evidence where the accused initially indicated a desire to see a lawyer but, after the interrogation was stopped and the assistant State's Attorney attempted to contact the public defender's office, stated that he did not want an attorney because an attorney might get him confused. (*People v. Morgan* (1977), 67 Ill. 2d 1, 364 N.E.2d 56.) In *Morgan*, the accused was advised of his *Miranda* rights preparatory to the interrogation whereas, in the case at bar, the respondent was not advised of his *Miranda* rights until the next day, and that remains questionable. Only the respondent and Officer Lindsey were present in the administrative room of the Mary Davis Home at the time the defendant allegedly waived his rights. The officer said he read the *Miranda* warnings to the respondent, and the respondent denies it. This, in addition to the facts that the so-called waiver occurred after the respondent had been kept in an isolation room overnight, that the respondent testified that when on the morning of the so-called waiver he again requested an attorney, and that, when the respondent requested the presence of an attorney during the initial interrogation he was merely handed a telephone book but apparently was never advised that, if he could not afford an attorney, one would be appointed for him, convinces us that the State did not carry its burden of proving that the confession was not obtained in violation of the respondent's *Miranda* rights and that the confession would certainly have been suppressed in a case in which the respondent was being tried for the offense to which he "confessed." This conclusion is further supported by *United States v. Koch* (7th Cir. 1977), 552 F.2d 1216, in which it was held that isolating a prisoner is such compulsion as to make his confession involuntary. Although the facts in *Koch* are more severe than we now have before us, we believe that the principles espoused in *Koch* apply here equally as well because of the age of the respondent.

However, the State does not argue that the confession involved in this appeal was not taken in violation of the respondent's constitutional rights. Instead, the State contends that this "exclusionary rule" has no application to a probation revocation proceeding. We disagree.

The argument presented by the State relies heavily on cases which hold that the exclusionary rule of the Fourth Amendment to the United States Constitution relating to improper searches and seizures is not applicable

to probation revocation proceedings. (*People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529; *People v. Woodall* (2d Dist. 1976), 44 Ill. App. 3d 1003, 358 N.E.2d 1267; *People v. Swanks* (4th Dist. 1975), 34 Ill. App. 3d 794, 339 N.E.2d 469.) That exclusionary rule has no relevance to this appeal. The rationale of the Illinois Supreme Court in withholding application of the exclusionary rule adopted to give effect to the Fourth Amendment was stated in *People v. Dowery*:

> "Merely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation." (62 Ill. 2d 200, 206, 340 N.E.2d 529, 532.)

However, this rationale points up the distinctions between cases involving the Fourth Amendment and cases involving *Miranda's* protection of the Fifth Amendment privilege against self-incrimination during in-custody situations. In a case involving an improper search and seizure there is evidence of a probation violation which was merely improperly discovered. In the case of an improperly elicited confession, the improper conduct created the evidence. Furthermore, the State can not argue that there are no exclusionary rules available in a probation revocation proceeding, for the evidentiary exclusionary rule of hearsay is equally applicable to probation revocation proceeding as to other criminal cases. *People v. Wilson* (3d Dist. 1976), 44 Ill. App. 3d 15, 357 N.E.2d 842.

■■ A respondent admitting to a violation of probation is entitled to the same due process protection as applies to a defendant entering a guilty plea. (*People v. Pier* (1972), 51 Ill. 2d 96, 281 N.E.2d 289.) This statement of policy has been interpreted to mean that, although the admonitions of Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) need not be given to a respondent admitting to probation violations, due process of law requires that a respondent's admissions be voluntarily made. (*In re Haggins* (1977), 67 Ill. 2d 102, 364 N.E.2d 54; *People v. Beard* (1974), 59 Ill. 2d 220, 319 N.E.2d 745; *People v. Godsey* (2d Dist. 1974), 22 Ill. App. 3d 382, 317 N.E.2d 157.) This court has recently observed that the entire purpose of the *Miranda* safeguards is to ensure the voluntariness of confessions made while the accused is in the custody of the police. (*People v. Nestrick* (3d Dist. 1977), 45 Ill. App. 3d 519, 359 N.E.2d 503.) The logical extension of this reasoning requires that we recognize in probation revocation proceedings a rule excluding the admission into evidence any admission of a probation violation obtained while the respondent was in the custody of the police and in violation of the respondent's *Miranda* rights.

Lastly, the State calls our attention to an unpublished opinion, *People v. Thomas* (No. 13815, 4th Dist., Jan. 20, 1977). That opinion was filed under

Supreme Court Rule 23 (Ill. Rev. Stat. 1975, ch. 110A, par. 23) which allows for the disposition of a case by order if the appellate court finds that the opinion has no precedential value, that no substantial question was presented or that jurisdiction is lacking. Since the precedential value of the *Thomas* decision is in question and we disagree with the reasoning of the court entering that decision, we refuse to follow it.

Accordingly, the judgment of the Circuit Court of Knox County is reversed and the cause is remanded for a new hearing.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.