(No. 49935.—

(No. 50067.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CHARLES W. PETERSON, Appellant.—*In re*
DOUGLAS McMILLAN, a Minor, Appellee.—(The
People of the State of Illinois, Appellant.)

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

WARD, C.J., and UNDERWOOD, J., concurring.

Mary Robinson, Deputy Defender, and Mark Schuster, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, of Chicago, and Philip Weber, of Springfield, Assistant Attorneys General, of counsel), for the People.

William J. Scott, Attorney General, of Springfield, and Carl E. Hawkinson, State's Attorney, of Galesburg (Donald B. Mackay and Philip Weber, of Springfield, and Melbourne A. Noel, of Chicago, Assistant Attorneys General, and James E. Hinterlong and Linda M. Vodar, of the Illinois State's Attorneys Association Prosecutors' Appel-

late Service, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Michael J. Pelletier, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

These consolidated cases involve the admissibility, in probation revocation proceedings, of the accused probation violator's allegedly involuntary confession and its fruits. We hold that the involuntary confession of an accused probation violator and the fruits of such a confession are inadmissible in a proceeding to revoke his probation. Accordingly, in cause No. 49935, *People v. Peterson* (1977), 50 Ill. App. 3d 853, we modify the judgment of the appellate court, vacate the judgment of the circuit court and remand the cause to the circuit court with directions to reconsider its decision revoking probation in light of the remaining evidence; in cause No. 50067, *In re McMillan* (1977), 51 Ill. App. 3d 940, we vacate the judgments of the appellate and circuit courts, and remand the cause to the circuit court with directions to determine whether McMillan's confession was voluntary.

Although these consolidated cases share a common question of law, their procedural histories differ substantially and require separate treatment. In cause No. 49935, the probationer, Charles W. Peterson, was arrested by Crystal Lake police officers at about 12:10 a.m. on June 22, 1973, on the the charge of possession of a hypodermic syringe. They transported him to the Crystal Lake police station, where he was given *Miranda* warnings, though he was not told that he could stop the questioning at any time.

Two officers began to question Peterson in an

interrogation room. They had received a tip from an unnamed informant that Peterson (along with two other men known to the informant only as "Mike" and "Eddie") had burglarized a gas station on June 22, 1973, and the officers' questions quickly focused on this incident. Peterson denied participating in the crime, and claimed that he had been in Chicago with his girlfriend on the night in question. Peterson refused to reveal his girlfriend's name, however, claiming that he did not want to get her involved in the investigation. When the interrogating officers then indicated that they already knew her identity through information they had found in Peterson's wallet, and that they intended to contact her, Peterson confessed the crimes, naming Eddie Crittendon as one of his accomplices.

At Peterson's trial on the underlying criminal charges, the circuit court suppressed Peterson's confession, finding it to have been the result of "psychological coercion" and of the failure to warn defendant of his right to discontinue the questioning at any time. Nonetheless, relying upon *People v. Dowery* (1975), 62 Ill. 2d 200, 206, the court held that same confession (along with the testimony of Eddie Crittendon) admissible at Peterson's probation revocation hearing. The court eventually revoked Peterson's probation, basing its decision in part upon the aforementioned evidence. The Appellate Court, Second District, modified in part, affirmed in part, and remanded (*People v. Peterson* (1977), 50 Ill. App. 3d 853), finding certain other defects in the judgment of the circuit court, and we granted Peterson's petition for leave to appeal.

Peterson contends that the voluntariness of his confession was an issue of ultimate fact in the court's ruling on the motion to suppress the confession in the trial on the underlying criminal charge, that the circuit court found that statement to have been involuntary, and that the State therefore was collaterally estopped from chal-

lenging that finding in the subsequent probation revocation proceeding. We agree.

Voluntariness, and not just the existence of a technical *Miranda* violation, was an ultimate issue of fact subsumed in the circuit court's ruling on Peterson's motion to suppress his confession, because an involuntary confession may not be used to impeach the defendant's testimony, whereas a mere technical *Miranda* violation does not foreclose such use of the confession. (*Harris v. New York* (1971), 401 U.S. 222, 224-25, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645. See also *People v. Moore* (1973), 54 Ill. 2d 33, 37; *cert. denied* (1973), 412 U.S. 943, 37 L. Ed. 2d 404, 93 S. Ct. 2787.) There can be no doubt that, in finding the defendant's confession to have been the result of "psychological coercion" and of failure to warn of the right to discontinue questioning, the trial court found Peterson's confession to have been involuntary. (*Cf., e.g., Garrity v. New Jersey* (1967), 385 U.S. 493, 496, 17 L. Ed. 2d 562, 565, 87 S. Ct. 616, 618 (mental coercion renders statement involuntary).) The State did not appeal this finding, and, accordingly, was collaterally estopped from challenging it in any subsequent proceeding (*People v. Williams* (1975), 59 Ill. 2d 557, 560-62), including a subsequent probation revocation hearing (*People v. Grayson* (1974), 58 Ill. 2d 260, 264-65).

*People v. Dowery* (1975), 62 Ill. 2d 200, 206, contrary to the State's position, does not govern this case. In *Dowery,* this court held that, because the normal fourth amendment exclusionary rule does not apply to probation revocation proceedings, the suppression of evidence by virtue of that rule in a criminal trial did not preclude the State from seeking admission of such evidence in a subsequent probation revocation proceeding. *Dowery* thus did not hold that collateral estoppel did not attach to the prior finding of a fourth amendment violation. Rather, *Dowery* held only that even if such a violation had

occurred, it was irrelevant, in the absence of a showing of "harassment." 62 Ill. 2d 200, 206.

Thus, in this case, there is no question that the State has been collaterally estopped from challenging the circuit court's finding that defendant's confession was involuntary. The question remains, however, whether that involuntariness makes any difference in terms of the admissibility of that confession and its fruits at Peterson's probation revocation proceeding. We conclude that it does make a difference.

It is well settled that some due process protections attach to probation revocation proceedings, because "the results of a probation revocation may be a deprivation of liberty and, consequently, as serious as the original determination of guilt." (*People v. Pier* (1972), 51 Ill. 2d 96, 100.) The question, as always, is whether the particular protection or safeguard at issue is applicable.

In refusing to suppress evidence obtained in violation of the fourth and fourteenth amendments, *People v. Dowery* turned largely on the limited deterrent purposes of the judicially created rule excluding evidence obtained through unreasonable searches and seizures and other violations of the fourth amendment. (62 Ill. 2d 200, 204-07.) Considerations other than deterrence are involved in cases arising under the fifth amendment privilege against self-incrimination, however. The exclusionary rules of the fifth amendment and of section 10 of article I of our constitution are not judicially created but are, as the State concedes, an element of the constitutional provisions themselves. Although one can hypothesize contrary examples, as a general rule, the sanctity of the person is more deeply offended by invasions of his mind than of his home, or even of his pockets.

We also find it significant that several of those courts which have considered the question of the applicability of *Miranda* to probation revocation proceedings have ex-

pressly or impliedly noted that no question of involuntariness was properly before them. (See, *e.g., United States v. Johnson* (5th Cir. 1972), 455 F.2d 932, *cert. denied* (1972), 409 U.S. 856, 34 L. Ed. 2d 101, 93 S. Ct. 136; *People v. W.* (1969), 24 N.Y.2d 732, 249 N.E.2d 882, 302 N.Y.S.2d 260; *Cunningham v. State* (Tex. Crim. App. 1972), 488 S.W.2d 117, 120.) The reason for those courts having expressed such reservations is obvious: There is a fundamental difference between violations of *Miranda's* prophylactic rules and violations of the rights those rules were designed to protect. (See, *e.g., Harris v. New York.*) Nonetheless, several other courts have not drawn the line at even involuntary statements. Rather, they have simply held the privilege irrelevant to the admissibility of evidence in such proceedings. (*E.g., State ex rel. Struzik v. Department of Health & Social Services* (1977), 77 Wis. 2d 216, 221, 252 N.W.2d 660, 662 (parole revocation); *Short v. United States* (D.C. 1976), 366 A.2d 781.) Their reasoning apparently is that the privilege bars the admission of compelled testimony only in criminal cases, and that a probation revocation is not a criminal case. They further suggest that, to prohibit the use of such evidence in probation revocation proceedings would be to unnecessarily burden such proceedings with technical evidentiary rules. We do not agree.

The State, however, contends that the unavailability of a coerced confession at a criminal trial is deterrence enough, and that the State ought not be prohibited from incarcerating probationers through coercive investigatory techniques. We hold, however, that the "due process" of a probation revocation proceeding (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756) must include forbearance from the use of coerced testimony and its fruits. The conditional liberty of a probationer may be different from that of the ordinary citizen, but it is not so different as to permit an individual to be

taken from the sidewalk to the cell block on the basis of information wrung from his lips. Accord, *State v. Smith* (1975), 112 Ariz. 416, 542 P.2d 1115.

Society, no doubt, has a very important interest in protecting itself against further harm from persons convicted of crime. But that interest must chiefly be served at the time of initial sentencing. A sentence of probation is an affirmative determination that the individual does not represent a threat to the community. (Ill. Rev. Stat. 1975, ch. 38, par. 1005–6–1(a).) If the State seeks to overturn that decision, it must do so without the use of information forced from the lips of the accused. The circuit court therefore erred in holding that *People v. Dowery* prohibited exclusion of Peterson's involuntary statement from evidence at the probation revocation hearing. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 10.

For similar reasons, the fruits of that confession—the testimony of Eddie Crittendon—also should have been excluded. We note that there is no question of attenuation here, unlike in *Michigan v. Tucker* (1974), 417 U.S. 433, 41 L. Ed. 2d 182, 94 S. Ct. 2357, nor was the fifth amendment violation at issue here merely a technical one, *e.g.,* one where the accused's statement itself is concededly voluntary despite a *Miranda* violation somewhere in its ancestry. See *Michigan v. Tucker* (1974), 417 U.S. 433, 461, 41 L. Ed. 2d 182, 203, 94 S. Ct. 2357, 2372-73 (White, J., concurring in the judgment); *cf. United States v. Ceccolini* (1978), 435 U.S. 268, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (fourth amendment violation).

However, because there were additional grounds for revocation alleged by the State, found by the circuit court, and upheld by the appellate court, we vacate the judgment of the circuit court, modify the judgment of the appellate court in cause No. 49935 and remand the cause to the circuit court to reconsider its decision in light of those grounds which remain undisturbed by the judgment of

either this court or the appellate court.

We now turn our attention to cause No. 50067, *In re McMillan.* There is no transcript of the relevant suppression hearing, but the parties have stipulated as to the testimony adduced at that hearing.

The appellee in cause No. 50067, Douglas McMillan, is a juvenile probationer. He testified that, at approximately 7 p.m. on July 27, 1976, he was riding as a passenger in a car driven by Alfie Stambaugh, when the car was stopped by Abington police officers. The officers took Stambaugh into custody in their patrol car, and asked McMillan to follow them to the police station in Stambaugh's car. McMillan complied, and shortly after his arrival at the station, Officer Edward L. Lindsey began to question him about certain burglaries and thefts. Although no one informed McMillan of his constitutional rights, McMillan himself several times demanded to see a lawyer. The only response he got was to be handed a phone book, and McMillan neither remembered nor found an attorney to call.

McMillan's mother, responding to a telephone message from the police, arrived at the station shortly after 9 p.m. She, too, heard her son's unanswered requests for counsel.

Shortly after 10 p.m. Officer Lindsey and another officer drove McMillan to the Mary Davis juvenile home in Galesburg, where they confined him to an "isolation room" and left him there overnight.

Lindsey returned the next morning (July 28, 1976), and McMillan was taken from the isolation room to an "administrative room" for further interrogation.

Officer Lindsey testified that, at this time, he read McMillan his *Miranda* rights; McMillan denies this. (There was no one else present in the room, and we have only their conflicting statements on this point.) Lindsey then gave McMillan a "voluntary statement form." McMillan admits having initialled the "enumerated rights" on the

face of the form, but denies having read it. Lindsey then told McMillan to write a statement regarding the thefts and burglaries, and McMillan complied.

The circuit court refused to suppress the confession at McMillan's probation revocation hearing, the appellate court reversed (51 Ill. App. 3d 940), and we granted the State's petition for leave to appeal.

The appellate court dealt with this confession as though it were an "admission" requiring a showing of voluntariness. (See, *e.g., In re Haggins* (1977), 67 Ill. 2d 102.) However, the admissibility of a confession is not governed by the rules applicable to judicial admissions of guilt, such as pleas of guilty (*cf.* Supreme Court Rule 402 (58 Ill. 2d R. 402)) and in-court admissions of probation violations. (*Cf., e.g., In re Haggins* (1977), 67 Ill. 2d 102.) Nonetheless, the question of voluntariness remains, and we see no justification for permitting greater coercion of juvenile probationers than of adult probationers. Their interests in their particular forms of conditional liberty are not so distinct as to permit a distinction as to the applicability of the privilege against self-incrimination to proceedings for revocation of that liberty.

However, since the circuit court apparently never determined whether McMillan's confession was voluntary, and since there is conflicting testimony regarding the circumstances under which that confession was obtained, we think it necessary to have the trier of fact resolve these conflicts *ab initio*.

For the foregoing reasons, we vacate the judgments of the appellate and circuit courts in cause No. 50067 and remand the cause to the circuit court with directions to determine whether McMillan's statement was voluntary, and if found not to have been voluntary, we direct that said confession and its fruits be suppressed, and McMillan be granted a new hearing. If said confession is found to have been voluntary, the court is directed to reinstate its

judgment revoking probation.

     *49935 — Appellate court affirmed in part and modified in part; circuit court vacated; cause remanded, with directions.*

     *50067 — Vacated and remanded, with directions.*

    WARD, C.J., and UNDERWOOD, J., concur in the judgment.