(No. 46890.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. FREDDIE DOWERY, Appellant.

*Opinion filed November 25, 1975.*

CREBS, J., took no part.
GOLDENHERSH, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Dale W. Broeder, Assistant Public Defenders, and Robert B. Thompson, Jack L. Uretsky, Christine Bucko, and Charles Amato (law students), of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

The sole issue for review in this appeal is whether evidence which has been suppressed in proceedings on a substantive criminal offense may be subsequently utilized to revoke probation. The appellate court held that such evidence was admissible (*People v. Dowery*, 20 Ill. App. 3d 738) and we granted leave to appeal.

On April 16, 1971, defendant, Freddie Dowery, pleaded guilty to armed robbery in the circuit court of Cook County and was placed on 5 years' probation. On February 9, 1972, defendant was arrested and charged with burglary. During a hearing on the burglary charge, defense counsel sought to suppress certain items taken in the burglary which defendant had in his possession shortly before his arrest.

The record discloses that Officer James Polk talked to an unidentified citizen at 71st Street and South Wabash Avenue in Chicago. Polk was told that a burglary may have occurred in that area and several men were seen carrying merchandise away. Polk was unable to corroborate the fact

that a burglary had taken place or its location. Polk was not in uniform and he was driving an unmarked police car at this time.

Shortly thereafter Polk observed the defendant and another, identified as "Junkie Slim," walking northward in the 6700 block of South Wabash at about 3:30 p.m. Polk did not have a warrant for defendant's arrest nor had he observed defendant commit a crime. As he drove near defendant, Polk saw that defendant was carrying a bulky item which had been covered with a sheet and blanket. Defendant and the other man crossed the street and began to walk into an alley. They turned and, seeing Polk, both men ran after dropping the items they were carrying. Dowery was apprehended, but the other man eluded the police. At the conclusion of this hearing the trial court sustained defendant's motion to suppress. The State moved that the burglary charge be stricken with leave to reinstate. No appeal was taken from the suppression order.

Prior to disposition of the burglary charge the State filed an application to revoke defendant's probation which had been imposed on the armed robbery conviction. The application recited that the basis for revocation of probation was defendant's scheduled appearance on the burglary matter.

Following the hearing on the motion to suppress certain evidence taken in the burglary, a rule to show cause was issued for the revocation of defendant's probation. At the probation revocation proceedings the burglary victim identified the items discarded by the defendant and the other man as being her property. Officer Polk reiterated his testimony concerning defendant's apprehension. Polk further said that after defendant was placed in custody and advised of his constitutional rights, defendant stated he did not commit the burglary but he did help carry the stolen property away. Defendant testified on his own behalf claiming he did not know the property was stolen until his companion told him after they saw Polk. Defendant

conceded that he made the incriminating admission as to his participation after the burglary occurred.

At the conclusion of the hearing on May 17, 1972, the trial court revoked defendant's probation and sentenced him to the penitentiary for a term of 2 to 4 years. The record reflects that on the day notice of appeal was filed, the trial court, on defendant's motion and after hearing evidence in aggravation and mitigation, modified the maximum sentence to 3 years.

Defendant maintains that the affirmative use of evidence at the probation revocation proceeding which had been previously suppressed violated his constitutional right to be free from illegal searches and seizures. He requests that the "exclusionary rule" be applied to revocation proceedings. Although counsel have stated during oral argument that the correctness of the suppression order was arguable, the propriety of that disposition is not before this court.

The United States Supreme Court has said that the "exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ***.' Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." (*United States v. Calandra* (1974), 414 U.S. 338, 347, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 619.) As that court has recently explained, the application of the "exclusionary rule" safeguards "Fourth Amendment guarantees in two respects: 'in terms of deterring lawless conduct by federal officers,' and by 'closing the doors of the federal courts to any use of evidence unconstitutionally obtained.' [Citation.] These considerations of deterrence and of judicial integrity, by now, have become rather commonplace in the Court's cases. [Citations.] 'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the

constitutional guarantee in the only effectively available way—by removing the incentive to disregard it.' [Citation.] But '[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.' " (*Brown v. Illinois* (1975), 422 U.S. 590, 599-600, 45 L. Ed. 2d 416, 424-5, 95 S. Ct. 2254, 2259-60.) This judicially created remedy is applicable to State courts. (*Mapp v. Ohio* (1961), 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, 81 S. Ct. 1684, 1691.) But in determining whether the "exclusionary rule" should be extended to certain proceedings a balancing test has been utilized to limit application of the rule "to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra* (1974), 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 620.

While a defendant is entitled to due process of law at probation revocation proceedings, significant dissimilarities exist between such proceedings and a criminal trial. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756, 1759; *People v. Beard* (1974), 59 Ill.2d 220, 226, *cert. denied,* 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 2001.) In *Gagnon v. Scarpelli* the Supreme Court noted the varying interests involved in revoking probation. The defendant has an interest not to have his liberty unjustifiably curtailed. The State has the interest not to interrupt a successful rehabilitation effort, but the State must not imprudently endanger community safety.

It is within this context that defendant's contention must be viewed in order to determine whether the "exclusionary rule" should have been applied to his probation revocation. In resolution of this issue we are aided by numerous decisions which have discussed the matter. With limited authority to the contrary, the overwhelming number of reported cases have held that the fourth amendment's "exclusionary rule" was not applic-

able under the circumstances to probation revocation proceedings or qualitatively comparable proceedings to revoke parole. *United States v. Winsett* (9th Cir. 1975), 518 F.2d 51; *United States v. Farmer* (6th Cir. 1975), 512 F.2d 160, *cert. denied*, —— U.S. ——, 46 L. Ed. 2d 305, 96 S. Ct. 397; *United States v. Brown* (5th Cir. 1973), 488 F.2d 94; *United States v. Hill* (7th Cir. 1971), 447 F.2d 817; *United States ex rel. Sperling v. Fitzpatrick* (2d Cir. 1970), 426 F.2d 1161; *United States ex rel. Lombardino v. Heyd* (E.D. La. 1970), 318 F. Supp. 648, *aff'd per curiam* (5th Cir.) 438 F.2d 1027, *cert. denied* 404 U.S. 880, 30 L. Ed. 2d 160, 92 S. Ct. 195; *State v. Caron* (Me. 1975), 334 A.2d 495; *People v. Coleman* (1975), 13 Cal. 3d 867, 876 n.8, 533 P.2d 1025, 1033 n.8, 120 Cal. Rptr. 384, 393 n.8; *State v. Thorsness* (Mont. 1974), 528 P.2d 692; *People v. Atencio* (Colo. 1974), 525 P.2d 461; *Commonwealth v. Kates* (1973), 452 Pa. 102, 305 A.2d 701; *Stone v. Shea* (1973), 113 N.H. 174, 304 A.2d 647; *Reeves v. Turner* (1972), 28 Utah 2d 310, 501 P.2d 1212; *Barker v. State* (Tenn. Crim. App. 1972), 483 S.W.2d 586; *State v. Kuhn* (1972), 7 Wash. App. 190, 499 P.2d 49; but see *Michaud v. State* (Okla. Crim. App. 1973), 505 P.2d 1399.

In analyzing many of the aforementioned cases, the Supreme Court of Maine in *State v. Caron* observed: "The rationale of the decisions is that since the Federal Fourth Amendment 'evidence-exclusionary' rule is operative in any event in all 'criminal prosecutions', the additional furtherance of its policy objectives achieved by extending the rule to hearings for revocation of probation (or parole) is insufficient to justify the concomitant impairment of the proper functioning of the probation-parole system." (334 A.2d 495, 499.) And in *United States v. Winsett* the Court of Appeals remarked that at a probation revocation proceeding all reliable evidence should be available to gauge a defendant's rehabilitative effort. It concluded that extension of the "exclusionary rule" to such proceedings

"would tend to frustrate the remedial purposes of the probation system." 518 F.2d 51, 55.

The only reservation expressed by several courts in denying applicability of the "exclusionary rule" to a revocation proceeding might occur in situations where police harassment of probationers is demonstrated. (*E.g., United States v. Winsett,* 518 F.2d 51, 54 n.5; *United States v. Farmer,* 512 F.2d 160, 162; *United States ex rel. Lombardino v. Heyd,* 318 F. Supp. 648, 651.) The facts of the present case plainly show an absence of any police harassment.

In view of the prevailing authority we reject defendant's position that would completely prohibit introduction of evidence at a probation revocation hearing if such evidence was obtained in violation of the fourth amendment. The grant of probation was imposed upon defendant in the present case after the trial court's consideration that he was not likely to commit another offense; that his rehabilitation would be advanced by probation; and, that the public interest would be served by such disposition. (Ill. Rev. Stat. 1971, ch. 38, par. 117—1.) It is clear that granting or denying probation to a convicted defendant necessarily requires the balancing of the character and background of the defendant and the interests of society. (See *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 554.) During a revocation hearing the interests of society must be amply considered. (See *In re Martinez* (1970), 1 Cal. 3d 641, 650, 463 P.2d 734, 740, 83 Cal. Rptr. 382, 388, *cert. denied,* 400 U.S. 851, 27 L. Ed. 2d 88, 91 S. Ct. 71.) Merely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation.

Defendant suggests that, if illegally seized evidence may be introduced in probation revocation proceedings, this will lead to police abuse in the treatment of

probationers. As heretofore noted, various courts have cautioned that police harassment of probationers will preclude introduction of improperly seized evidence at a revocation proceeding. We note when similar speculative arguments of police abuse were advanced in analogous situations, the United States Supreme Court refused to accept this as a basis for modifying its position on the defense of entrapment (*United States v. Russell* (1973), 411 U.S. 423, 431-32, 36 L. Ed. 2d 366, 373, 93 S. Ct. 1637, 1643) or precluding introduction of an accused's statements for impeachment purposes if they are taken in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*Oregon v. Hass* (1975), 420 U.S. 714, 43 L. Ed. 2d 570, 578, 95 S. Ct. 1215, 1221.) If a police harassment is shown, the judiciary may impose appropriate sanctions to deter misconduct. *Cf. Latta v. Fitzharris* (9th Cir. 1975), 521 F.2d 246, 252, *cert. denied,* ——— U.S. ———, 46 L. Ed. 2d 130, 96 S. Ct. 200.

Defendant further claims that application of the "exclusionary rule" to probation revocation proceedings is mandated by State law. He relies upon section 12 of article I of the 1970 Constitution, which provides:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly."

Defendant argues that his constitutional rights were violated by the purported illegal arrest and search. He urges that the "wrong" perpetrated upon him by the police be remedied by prohibiting the use of illegally obtained evidence. In *Sullivan v. Midlothian Park District* (1972), 51 Ill.2d 274, 277, this court remarked that the constitutional predecessors of section 12 of article I "are an expression of a philosophy and not a mandate that a 'certain remedy' be provided in any specific form ***." An examination of section 12 of article I discloses no contrary intent in this regard. (See Helman and Whalen,

Constitutional Commentary, S.H.A. Const. of 1970, art. I, sec. 12, p. 556.) Under the circumstances of this case defendant was afforded a remedy when the evidence was suppressed at the criminal proceeding. Having concluded that defendant did not have a right to a suppression of the evidence at the probation revocation proceeding, we find that there was no violation of section 12 of article I of the 1970 Constitution.

Nor do we believe that our recent decision in *People v. Grayson* (1974), 58 Ill.2d 260, *cert. denied,* 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001, is dispositive of this matter. In *Grayson* the defendant was acquitted of armed robbery and the State then sought to revoke his probation on a prior conviction. The sole basis for the revocation was the charge which had resulted in defendant's acquittal. This court applied the doctrine of collateral estoppel to preclude relitigation of the same issue upon the same evidence, *i.e.,* defendant's identity as a participant in the crime.

*Grayson* defined the principle of collateral estoppel to mean " 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " (58 Ill.2d 260, 263.) In the present case the doctrine of collateral estoppel would not apply, for we hold that, except in limited circumstances which are not present here, no issue arises in probation revocation proceedings as to the admissibility of evidence previously suppressed.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

MR. JUSTICE GOLDENHERSH, dissenting:
I dissent. The majority, although recognizing that

deterrence of unconstitutional police conduct is only one of two reasons for the existence of the exclusionary rule, completely ignores the other, and in my opinion, the more important reason, "the imperative of judicial integrity" (*Elkins v. United States,* 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 1680, 80 S. Ct. 1437, 1447; *Mapp v. Ohio,* 367 U.S. 643, 659, 6 L. Ed. 2d 1081, 1092, 81 S. Ct. 1684, 1694). Unless the fourth amendment to the Federal Constitution and section 6 of article I of our State Constitution are to be reduced "to a form of words" (*Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183) they must' be interpreted to mean that evidence seized in violation of their provisions is not only not to be used in a "criminal prosecution" but "that it shall not be used at all." 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183.

The sovereign should never, under any circumstances, be permitted to make use of evidence obtained as the result of its own unlawful acts. The dangers inherent in the failure to adhere to that rule were stated far more eloquently than can I in Mr. Justice Brandeis' dissent in *Olmstead v. United States,* 277 U.S. 438, 485, 72 L. Ed. 944, 959-60, 48 S. Ct. 564, 575, wherein he said: .

> "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government

may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."