THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TERRY TIDWELL, Defendant-Appellant.

Second District   No. 79-858

Opinion filed May 1, 1981.

Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Paula R. Johnson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant appeals from a judgment revoking his sentence of probation in a theft conviction and sentencing him to two years imprisonment. He contends that inculpatory statements, although voluntary, were deliberately elicited and obtained in violation of his constitutional right to counsel.

The defendant was sentenced to thirty months probation for the theft offense on May 1, 1979. On August 22, 1979, a petition to vacate the probation was filed alleging that defendant committed a burglary on July 9 in Rockford (City burglary) and a burglary on June 19 in Winnebago County (Tipple Road burglary).

At the revocation hearing the charges regarding the July 9 City burglary were dismissed on defendant's motion at the close of the State's evidence. Testimony was also adduced as to the June 19 Tipple Road burglary. This included that of two police officers concerning a conversation they had with defendant at the county jail shortly before the hearing. The officers testified that they took defendant from his cell block

into an interview room and told him that they would like to talk to him about a couple of burglaries that they were investigating, the City burglary and the Tipple Road burglary. Officer Harbison further testified: "At that point we had given Terry some facts out of each case. We discussed or we told Terry what we had on the Tipple Road burglary, and we told him what the city had on their burglary." Harbison testified that defendant then made the following response: "I'll tell you all about the Tipple Road burglary, but first I want to talk to you about the Fifth Street burglary" (the alleged Rockford burglary on July 9.) According to Harbison's testimony Detective Kincannon at that point advised defendant of his *Miranda* (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) rights and defendant waived them. Defendant then made incriminating statements concerning his involvement in the Tipple Road burglary.

Detective Kincannon testified that defendant said he "would talk to us about the burglary on Tipple Road, but he wanted to discuss the other one first"; denied any involvement with the City burglary; and then said, "But you've got me on the other one," at the same time putting his hand on the file of the Tipple Road burglary. Kincannon testified that he then told defendant that before they went any further he would like to advise him of his rights according to the rights waiver form.

Ann Marie Davis, an investigator for the public defender, testified that she went to the county jail to see defendant that afternoon. A jailer told her that the defendant was with some detectives and she demanded to see him. She had to wait about 10 or 15 minutes and repeat her demands before she was finally allowed to see the defendant.

Defendant testified and denied that he had admitted participating in the Tipple Road burglary. There was also conflicting testimony as to when the *Miranda* form was signed relative to when defendant was informed that the investigator was waiting to see him.

In denying defendant's motion to suppress statements the court found that there was no questioning by the officers prior to the time defendant waived his rights. The court also found that the oral admissions were made prior to the time that Ms. Davis requested to see the defendant, and that the confession was voluntary.

Recent authorities have agreed that evidence illegally seized, if shown to be trustworthy, is admissible in probation revocation proceedings. In *People v. Dowery* (1975), 62 Ill. 2d 200, this principle was applied to evidence procured in violation of the fourth amendment. The court balanced society's interest in protection from probation violators, who were originally granted probation on the premise that they were not likely to commit other offenses and would be rehabilitated, against the danger

of police abuse and mistreatment of probationers. It noted that "technical deficiency in police conduct" should not preclude trustworthy evidence from being admitted at the revocation hearing. (62 Ill. 2d 200, 206.) The principle has also been extended to the use of voluntary statements obtained in violation of *Miranda* in a probation revocation hearing. *People v. Peterson* (1978), 74 Ill. 2d 478, 486. *Cf. People v. Knight* (1979), 75 Ill. 2d 291, 300.

While the particular issue before us appears to be of first impression, we have adverted to the problem involving the sixth amendment right to counsel in other contexts. In *People v. Redmond* (1980), 85 Ill. App. 3d 599, the defendant argued that the lineup identification was made in violation of his sixth amendment right to counsel and should not be admissible in his probation revocation hearing. We disagreed, concluding that the trustworthiness of the evidence is the touchstone for determining its admissibility in revocation hearings even though wrongfully obtained. We did, however, find that the defendant's right to counsel was not infringed and thus did not explicitly decide whether the lineup identification was trustworthy, 85 Ill. App. 3d 599, 605.

Although we were not dealing with a probation revocation in *People v. Washington* (1980), 90 Ill. App. 3d 631, 638-40, we concluded that there is no effective distinction between *Miranda* violations (in failing to advise the defendant of a right to appointed counsel and then questioning further), and violations of the sixth amendment right to counsel (by police interrogation while uncounseled and in custody), for purposes of deciding whether such statements are admissible for impeachment purposes. See *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643.

In this case the trial court found that the statements at issue were voluntary and this has not been challenged on appeal. It is undisputed that if this were a *Miranda* case an unchallenged finding of voluntariness would be dispositive. (See *People v. Peterson* (1978), 74 Ill. 2d 478, 483.) The fact that this case is governed by the constitutional principles emanating from *Massiah v. United States* (1964), 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203, holding that statements taken in violation of the sixth amendment right to counsel cannot be used as evidence against the defendant at trial, does not in our view change the result.

Although there may be differences in principle between *Miranda* violations and *Massiah*-based infractions, defendant has offered no reasons why voluntariness should not be the touchstone of admissibility in both cases. In applying evidentiary exclusionary rules developed for criminal trials to probation-revocation hearings, the courts have focused on the trustworthiness of the evidence. The fact that proceedings had

been initiated against defendant and counsel was appointed prior to the interrogation does not affect the trustworthiness of the statements elicited.

We recognize that there could be cases in which the police might take advantage of a defendant's status as a probationer and deliberately question him before he waives his right to counsel. Where the police willfully violate a defendant's sixth amendment rights, exclusion of the statements obtained may be a necessary deterrent. (*Cf. Dowery*, 62 Ill. 2d 200, 207.) However, here the record does not indicate purposeful misconduct by the police, and there is no contention that the absence of counsel rendered the statements untrustworthy.

The judgment is therefore affirmed.

HOPF and LINDBERG, JJ., concur.