COURT OF APPEALS OF VIRGINIA

Present:  Judge Benton, Senior Judge Cole and
          Retired Judge Trabue[*]
Argued at Richmond, Virginia

JEFFREY TORRANCE JOHNSON

v.          Record No. 2220-93-2               OPINION BY
                                        JUDGE KENNETH E. TRABUE
COMMONWEALTH OF VIRGINIA                     OCTOBER 17, 1995

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Thomas N. Nance, Judge

          Cheryl Jakim Frydrychowski, Assistant Public
          Defender (David J. Johnson, Public Defender, on
          brief) for appellant.

          Robert H. Anderson, III, Assistant Attorney
          General (James S. Gilmore, III, Attorney General,
          on brief), for appellee.


     Jeffrey Torrance Johnson (Johnson) appeals the revocation of

probation and a suspended sentence on the ground that the

evidence used to show violation of his probation was the product

of an illegal search and seizure under the Fourth Amendment.  At

the time this appeal was argued, no appellate decision in this

Commonwealth addressed this specific issue.  On May 16, 1995, a

panel of this Court determined that the exclusionary rule does

not apply in suspended sentence revocation proceedings.  See

Anderson v. Commonwealth, 20 Va. App. 361, 457 S.E.2d 396 (1995).

 We hold that the rationale of Anderson applies equally to a

revocation of probation and for the reasons set forth below,

affirm the action of the trial court.

_____
     [*]Retired Judge Kenneth E. Trabue took part in the
consideration of this case by designation pursuant to Code
§ 17-116.01.

In 1991, Johnson was convicted of distribution of cocaine and was sentenced to twenty years in the penitentiary with eleven years and seven months suspended on the condition of good behavior and supervised probation upon release after confinement. While on supervised probation, in March 1993, police arrested and charged Johnson with a new offense of possession of cocaine with intent to distribute as a result of an investigatory stop, search, seizure, and arrest.

Richmond police received a call that a man with several guns was standing next to a car behind an apartment building in a high crime area. Responding to the call, a police officer observed Johnson driving quickly from behind the building. The officer stopped Johnson and explained that he was investigating a dispatch. The officer did not know Johnson, nor did the officer know of Johnson's probationary status. Johnson appeared nervous during the stop and the officer requested that he get out of the car so that the officer could conduct a weapons search. The search revealed ten grams of cocaine, $3000 in cash, a pager, and "some bags." The officer arrested Johnson and charged him with possession of cocaine with intent to distribute.

At Johnson's trial on the 1993 offense, the trial court sustained a motion to suppress the evidence, finding that the arresting officer did not have an "articulable reason" to justify the stop. The Commonwealth chose not to go forward with the criminal charges and the court then dismissed them. However, the Commonwealth did proceed with a show cause hearing on Johnson's

alleged violation of probation.  In this hearing the trial judge admitted the evidence obtained from the illegal stop.  The trial court found that Johnson had violated probation and revoked five years of Johnson's previously suspended sentence.

Johnson contends on appeal that the exclusionary rule should operate in probation revocation hearings to exclude illegally obtained evidence.  We disagree.

Historically, the purpose of the exclusionary rule was "to deter police misconduct."  Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991) (citation omitted).  Generally, the rule is intended to deter police misconduct by denying illegally obtained evidence from being admitted in the defendant's criminal trial.  In United States v. Calandra, 414 U.S. 338 (1974), the United States Supreme Court used a balancing test to determine whether the exclusionary rule should apply to the admission of evidence in grand jury proceedings.  Id. at 349. The Court concluded that the potential injury to the grand jury system outweighed the slight deterrent effect of using the exclusionary rule in federal grand jury proceedings.  Id. at 351-52.

We find minimal deterrent value in applying the exclusionary rule to revocation hearings.  See Payne v. Robinson, 541 A.2d 504, 507 (Conn.), cert. denied, 488 U.S. 898 (1988).  "[T]he process of revocation hearings 'should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial.'"  Davis v. Commonwealth, 12 Va. App.

81, 84, 402 S.E.2d 684, 686 (1991) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)).  In revocation hearings, application of the exclusionary rule would make the revocation proceedings inflexible and punish the court rather than the police.  A probationer is subject to the court's lawful orders; yet, the court, which was not responsible for the illegal search and seizure, would be unable to enforce its orders if the exclusionary rule applied in revocation hearings.

"[P]robation revocation hearings are not a stage in a criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution."  <u>Davis</u> at 84, 402 S.E.2d at 686 (citations omitted).  For example, in <u>Davis</u>, we held that a trial court, in its discretion, may admit hearsay testimony in revocation hearings.  <u>Id.</u>

The majority of other jurisdictions hold that the exclusionary rule does not apply to revocation hearings.  <u>See</u> <u>Anderson</u>, 20 Va. App. at 364, 457 S.E.2d at 398; <u>see also</u> <u>U.S. ex rel. Lombardino v. Heyd</u>, 318 F. Supp. 648, 650-51 (E.D. La 1970), <u>aff'd</u>, 438 F.2d 1027 (5th Cir.), <u>cert. denied</u>, 404 U.S. 880 (1971); <u>People v. Coleman</u>, 533 P.2d 1024, 1033 (Cal. 1975); <u>People v. Atencio</u>, 525 P.2d 461, 463 (Colo. 1974); <u>Brill v. State</u>, 32 So. 2d 607, 610 (Fla. 1947);  <u>People v. Dowery</u>, 312 N.E.2d 682, 687 (Ill. App. Ct. 1974), <u>aff'd</u>, 340 N.E.2d 529 (Ill. 1975); <u>Dulin v. State</u>, 346 N.E.2d 746, 751 (Ind. Ct. App. 1976); <u>State v. Caron</u>, 334 A.2d 495, 499-500 (Me. 1975); <u>Lemire v.</u>

Bouchard, 304 A.2d 647, 649 (N.H. 1973); Commonwealth v. Davis, 336 A.2d 616, 622 (Pa. Super. Ct. 1975); State v. Kuhn, 499 P.2d 49, 51-52 (Wash. Ct. App.), aff'd, 503 P.2d 1061 (Wash. 1972). See generally, Philip E. Hassman, Annotation, Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure, 77 A.L.R.3d 636, 641-46 (1977); 21 Am. Jur. 2d Criminal Law § 579 (1981); 16C C.J.S. Constitutional Law § 1123 (1985). We believe that the rationale of Anderson, in light of the persuasive authority of our sister jurisdictions, is applicable here. Accordingly, we hold that the exclusionary rule has no application in probation revocation hearings.

Some jurisdictions have held that due process considerations may require suppression of illegally seized evidence in revocation hearings where the record supports a finding that state actors had a bad faith motive in obtaining the evidence of the probation violation. See Anderson, 20 Va. App at 365, 457 S.E.2d at 398; State v. Proctor, 559 P.2d 1363, 1364 (Wash. Ct. App. 1977); People v. Stewart, 610 N.E.2d 197, 204-05 (Ill. App. 1993). Here, the trial court found, and the record supports, that no bad faith motive was involved in this stop of Johnson's vehicle.

Accordingly, for the reasons stated above, we affirm the revocation of Johnson's suspended sentence.

Affirmed.

Benton, J., dissenting.

Although another panel of this Court has decided that evidence unlawfully seized from a person by police is admissible as substantive evidence in a proceeding brought to revoke that person's probation, that decision, in my judgment, is contrary to the letter and spirit of <u>Weeks v. United States</u>, 232 U.S. 383 (1914), and <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961). Indeed, "the Supreme Court has never exempted from the operation of the exclusionary rule any adjudicative proceeding in which the government offers unconstitutionally seized evidence in direct support of a charge that may subject the victim of a search to imprisonment." <u>United States v. Workman</u>, 585 F.2d 1205, 1211 (4th Cir. 1978).

Moreover, I believe that due process is denied by using illegally obtained evidence as basis to impose imprisonment.

> A probation revocation hearing is adjudicative. Its first purpose is to determine whether the probationer is guilty of violating a provision of the probation order. Its second is to decide whether he should be continued on probation or be imprisoned. Although such a hearing is not a stage of a criminal prosecution, it is a criminal proceeding that may result in the loss of liberty. For this reason the due process clause entitles a probationer to written notice of his alleged violation; a hearing at which the evidence against him must be disclosed; the right to present witnesses in his own behalf; and, save in exceptional circumstances, the right to confront and cross-examine adverse witnesses. If a serious question of culpability exists, the probationer is constitutionally entitled to the assistance of counsel. In 1970 Congress augmented the constitutional

requirements by providing a statutory right to counsel at all federal revocation hearings. The similarity between many of the aspects of a criminal trial and a probation revocation proceeding is illustrated by the frequent use of the revocation proceeding as an alternative to trial on new charges against a probationer. It is also illustrated by the court's authority to modify the probationer's sentence.

Consideration of the nature of a probation revocation hearing leads to the conclusion that the application of the exclusionary rule will result in approximately the same potential for injury and benefit as its application in other criminal adjudicative proceedings. The rule's exclusion of some of the evidence about the new charges which form the basis of the complaint about the probationer, the delay incident to suppression hearings, and the rule's effectiveness in deterring future unconstitutional searches are neither significantly more nor less than in other such adjudicative proceedings. Therefore, the weight to be assigned the potential advantages and disadvantages of applying the rule to probation revocation proceedings cannot be ascertained by generalized references to the pros and cons of the rule – a subject that has been the topic of lively debate from the moment of the rule's promulgation.

Workman, 585 F.2d at 1209-10 (citations and footnotes omitted).

By failing to apply the exclusionary rule, this Court adopts a policy that denigrates judicial and governmental integrity. A court proceeding which results in a denial of liberty from "evidence secured through . . . a flagrant disregard of the procedure [devised to protect constitutional rights] . . . cannot be allowed to stand without making the courts themselves accomplices in willful disobedience of law." McNabb v. United

<u>States</u>, 318 U.S. 332, 345 (1943). The Court overlooks the police officer's violation of the constitution simply because the officer testified that Johnson was unknown to him when he stopped Johnson. "'If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.'" <u>Elkins v. United States</u>, 364 U.S. 206, 223 (1960) (citation omitted).

For these reasons, I would hold that the evidence that was unlawfully seized in violation of the Fourth Amendment should have been excluded at the revocation proceeding.