2016 IL App (1st) 153098

SIXTH DIVISION
Opinion filed:  December 23, 2016

No. 1-15-3098

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| 59th & STATE STREET CORPORATION, JOSE VASQUEZ, President, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No.  13 CH 18191 |
| | ) | |
| RAHM EMANUEL, Mayor of the City of Chicago and Local Liquor Control Commissioner; MARIA GUERRA, Acting Director of the Department of Business Affairs; THE LOCAL LIQUOR CONTROL COMMISSION OF THE CITY OF CHICAGO; DENNIS M. FLEMING, Chairman of the License Appeal Commission of the City of Chicago; and Members of the License Appeal Commission of the City of Chicago, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Justices Cunningham and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, 59th & State Street Corporation, appeals from orders of the circuit court of Cook County, affirming a final administrative decision of the License Appeal Commission of the City of Chicago (LAC) which affirmed an order of the Local Liquor Control Commission of the City of Chicago (LLCC) which revoked its retail liquor license for the premises at 5901 South

State Street and imposed fines totaling $17,000 against it for firearms related violations of State statutes and Chicago municipal ordinances. For the reasons which follow, we affirm.

¶ 2    The plaintiff has not argued that any of the factual findings upon which the order of the LLCC is based are against the manifest weight of the evidence. As a consequence, the following factual recitation is taken from the factual findings of the deputy hearing commissioner who presided over the hearing held in connection with the disciplinary proceedings regarding the plaintiff's liquor license and the transcript of those proceedings contained within the record.

¶ 3    The City of Chicago (City) issued a license to the plaintiff for the sale of liquor on the first floor at 5901 South State Street.[1] On January 21, 2011, at approximately 5:44 p.m., a task force of City employees arrived at the store to conduct an inspection. The task force consisted of seven police officers, one fire inspector, two health inspectors, one building inspector, and one official from the Department of Business Affairs and Consumer Protection. Carlos Vasquez, the plaintiff's corporate secretary, was at the store when the task force arrived.

¶ 4    The front portion of first floor of the building at 5901 South State Street contained a sales area. Located within the sales area were shelves of food; coolers containing beer, soda, and frozen food items; and a cash register. A doorway in the rear of the sales area provided access to stairs leading to the second floor, stairs leading to the basement, and a first-floor storage area. The first-floor storage area contained cases of liquor, supplies, and a large safe. A door leading to a small first-floor office was located near the rear of the building.

---

[1] The first sentence of the Statement of Facts contained in the defendants' brief states that "Jose and Carlos Vasquez, doing business as 59th & State St. Corp. were licensed to operate a packaged goods and liquor store known as Mr. Jack's Food and Liquor on the first floor of 5901 S. State St." However, the copy of the license appearing in the page of the record cited by the defendants in support of that sentence reflects that the license was issued to 59th and State Street Corporation, d/b/a Mr. Jack's Food and Liquor.

¶ 5     One of the Chicago police officers, Greg Golucki, went through the doorway at the rear of the sales area and ascended the stairs to the second floor.  According to Officer Golucki, the second floor consisted of a large open space with six doors along two of the walls.  He testified that none of the doors were locked, and he entered each of the rooms.  One of the rooms was an office in which he found documents relating to the first-floor business and a safe containing a gutter-like spout running through the floor to the cash register area on the first floor.  Another room was a bathroom.  The remaining rooms appeared to be bedrooms, each containing a box spring, a mattress, and a desk.

¶ 6     Officer Golucki testified that he found a .38 caliber bullet in an ashtray located on a nightstand in the first bedroom which he entered.  He did not see any personal items located in the room.  Officer Golucki returned to the first floor where he showed the bullet to Officer Brian Kavanaugh.  When Officer Golucki asked Carlos who occupied the room in which the bullet was found, Carlos responded "nobody."  Officer Kavanaugh asked Carlos if there were any firearms on the premises.  Carlos responded in the negative, after which Officer Kavanaugh asked him to open the large safe located in the rear storage room.  Claiming not to know the combination, Carlos declined.  In response to an inquiry by Officer Kavanaugh, Carlos stated that his brother, Jose Vasquez, knew the combination.  After calling his brother, Carlos opened the safe.  When the safe was opened, the officers discovered what Officer Kavanaugh described as two "assault type weapons:" an Iver Johnson Arms .320 caliber pistol with an eight-inch barrel and an AA Arms, model AP9, 9 millimeter Luger.  Also discovered in the safe was a quantity of ammunition.

¶ 7     After the weapons were discovered in the safe, Officer Golucki asked Carlos to open the door to the first-floor office.  Carlos complied, and upon entering the office, Officer Golucki

observed papers, file cabinets and a computer with a surveillance feed from the sales area. In addition, Officer Golucki found a Remington shotgun next to one of the file cabinets. Following the discovery of the weapons on the first floor, Officer Golucki returned to the second floor and entered the office located on that floor where he found a Dan Wesson Arms .357 Magnum pistol in a cabinet and a quantity of ammunition in a sack beneath the gun.

¶ 8    Following the discovery of the guns, the officers determined that Carlos did not have an Illinois Firearm Owner Identification (FOID) card and that none of the recovered weapons were registered with the City. Carlos was arrested and charged criminally.

¶ 9    As a consequence of the discovery of the firearms and ammunition, the City initiated disciplinary proceedings against the plaintiff regarding its liquor license, charging 12 firearms related violations of the City's ordinances and State statutes. Pursuant to notice, a hearing was conducted over seven days before a deputy hearing commissioner (hearing officer) appointed by the City's Department of Business Affairs and Consumer Protection. At the beginning of the hearing, the plaintiff attempted to present a motion seeking the suppression of all evidence obtained during the warrantless search of its premises on January 21, 2011. The City objected on the grounds that the plaintiff had failed to provide it with a copy of the motion in advance of the hearing. The hearing officer denied the motion, and the City presented evidence in support of the charges against the plaintiff which included the testimony of Officers Golucki and Kavanaugh, photographs of the areas where the firearms and ammunition were found, a certification from the Illinois State Police stating that Carlos had not been issued a FOID card, and a certification from the Chicago police department stating that none of the weapons found at the plaintiff's premises were registered.

¶ 10    Due to the pending criminal charges, Carlos did not testify at the hearing, and the plaintiff offered no exculpatory evidence.  Rather, in closing argument, the plaintiff urged the hearing officer to strike and disregard the City's evidence as having been obtained as the result of an unlawful warrantless search of portions of its property which were not part of the licensed premises.

¶ 11    Following the hearing, the hearing officer issued written findings of fact and recommendations.  Addressing the plaintiff's request that he strike the testimony of Officers Golucki and Kavanaugh and suppress the evidence obtained as a result of their search of its premises, the hearing officer found that the provisions of section 4-4-290 of the Chicago Municipal Code (Code) (Chicago Municipal Code § 4-4-290 (amended Nov. 19, 2008)) and section 4-4(2) of the Liquor Control Act of 1934 (Liquor Control Act) (235 ILCS 5/4-4(2) (West 2010)) allowed the officers to enter upon the plaintiff's licensed premises "at any time to investigate any potential violations of the law."  As a consequence, he concluded that the search of the plaintiff's premises was "conducted legally" and relied upon the evidence presented by the City which established the existence of firearms on the plaintiff's premises in support of his findings and recommendation.  Finding the testimony of Officers Golucki and Kavanaugh "credible and reliable," the hearing officer concluded that the City sustained its burden of proving all 12 of the charges against the plaintiff and recommended the revocation of the plaintiff's "business license" and the assessment of fines totaling $17,000.

¶ 12    After considering the hearing officer's written findings of fact and recommendation, the commissioner of the City's Department of Business Affairs and Consumer Protection and the City's local liquor control commissioner issued a joint "Order of Revocation and Fine," finding that all 12 of the charges against the plaintiff were sustained and ordering that the retail liquor

license, and all other licenses, issued to the plaintiff for the premises at 5901 South State Street be revoked and assessing $17,000 in fines against the plaintiff.

¶ 13    The plaintiff filed a timely administrative appeal before the LAC and again argued that the warrantless search of its premises was unlawful, and the evidence obtained during that search should have been suppressed.  On May 29, 2013, the LAC issued its decision, finding that the evidence of record supports the hearing officer's factual findings and affirming the LLCC's decision revoking the plaintiff's liquor license and assessing $17,000 in fines.  The LAC specifically declined to address the plaintiff's arguments concerning the "validity" of the search of its premises, stating that the issue was not within the scope of its jurisdiction.

¶ 14    Thereafter, the plaintiff filed a timely complaint for administrative review in the circuit court.  In its order of May 28, 2015, the circuit court found section 4-4(2) of the Liquor Control Act (235 ILCS 5/4-4(2) (West 2010)) and section 4-4-290 of the Code (Chicago Municipal Code § 4-4-290 (amended Nov. 19, 2008)) unconstitutional as applied to the search of the plaintiff's premises, but nevertheless denied the plaintiff's request that it suppress the evidence obtained as a result of that search.  The circuit court affirmed the LAC's final administrative decision with respect to 8 of the City's charges which resulted in the revocation of the plaintiff's retail liquor license and $7000 in fines.  Noting that section 8-20-020(a) of the Code (Chicago Municipal Code § 8-20-020(a) (added July 2, 2010)) upon which the remaining four counts were based had been repealed, the circuit court remanded those four counts back to the LLCC to consider the effect that the repeal of the ordinance had upon those counts and the fines imposed thereon.

¶ 15    Following the circuit court's order of May 28, 2015, the defendants filed a motion for reconsideration of that portion of the order relating to the remanded counts, asserting that the repeal of section 8-20-020(a) of the Code took effect after the LAC issued its final administrative

decision. Based upon the general savings clause contained in section 1-4-160 of the Code (Chicago Municipal Code § 1-4-160 (added June 7, 1990)), the defendants argued that the repeal of section 8-20-020(a) did not act to void penalties assessed prior to its repeal. In addition, the defendants argued that the plaintiff's failure to seek a declaratory judgment as to the constitutionality of section 8-20-020(a) resulted in a forfeiture of the constitutional issue. On September 25, 2015, the circuit court granted the defendants' motion for reconsideration, amended its order of May 28, 2015, to affirm the fines levied against the plaintiff on the four previously remanded counts, and affirmed the LAC's final administrative decision. This appeal followed.

¶ 16    In urging reversal, the plaintiff argues that the circuit court erred in refusing to suppress the evidence upon which the revocation of its liquor license and fines were based, as the evidence was obtained during a warrantless search of its premises conducted pursuant to a constitutionally infirm ordinance. The argument involves two issues: (1) the constitutionality of the municipal ordinance and State statute authorizing warrantless searches of premises licensed for the sale of liquor that were in effect on the date that the plaintiff's premises was searched; and (2) whether the evidence obtained as a result of that warrantless search should have been suppressed in the administrative proceeding which resulted in the revocation of the plaintiff's liquor license and the assessment of monetary penalties against it.

¶ 17    On the first issue, the plaintiff argues that both the municipal ordinance and State statute which authorized a warrantless search of its premises were unconstitutional as applied because they gave the City "an unlimited ability to conduct any inspections at any time, place and manner." The defendants appear to have conceded the issue as they failed to even address it in

the brief which they filed in this appeal. Conceded or not, we agree with the plaintiff's argument on this issue, as did the circuit court.

¶ 18    The fourth amendment to the United States Constitution (U.S. Const. amend. IV), made applicable to the States pursuant to the fourteenth amendment (U.S. Const. amend XIV), prohibits unreasonable searches and seizures. *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961). This prohibition is applicable to commercial premises. *New York v. Burger*, 482 U.S. 691, 699 (1987). "An owner or operator of a business thus has an expectation of privacy in commercial property." *Id*. "This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes." *Id.* at 699-700. However, when commercial property is being used in a closely regulated business, this expectation of privacy is attenuated. *Id*. at 700. As a consequence, the warrant and probable cause requirements of the fourth amendment standard of reasonableness are lessened in the context of administrative inspections of such businesses. *Id*. at 702.

¶ 19    The sale of intoxicating liquor is a closely regulated business. See *Daley v. Berzanskis*, 47 Ill. 2d 395, 397-98 (1971). As such, a warrantless inspection of commercial premises licensed to sell liquor conducted pursuant to a regulatory statute or ordinance may well be reasonable within the meaning of the fourth amendment. See *Burger*, 482 U.S. at 702. In *Burger*, the Supreme Court held that the warrantless inspection of a pervasively regulated business will be deemed reasonable under the fourth amendment "only so long as three criteria are met." *Id.* First, there must be a substantial governmental interest underlying the regulatory scheme pursuant to which the inspection is made. Second, the warrantless search must be necessary to further that regulatory scheme. Third, the statutes inspection program must provide

an adequate substitute for a warrant by advising the owner of the commercial premises that its property will be subject to periodic inspections undertaken for specific purposes and limiting the discretion of the inspectors in time, place and scope. *Id*. at 702-03.

¶ 20    On the date of the warrantless search of the plaintiff's premises, section 4-4-290 of the Code (Chicago Municipal Code § 4-4-290 (amended Nov. 19, 2008)) authorized investigators and employees of the City's Department of Business Affairs and Consumer Protection designated by the commissioner of that department to, "at any time," enter any business for which a license is required for the purpose of ascertaining whether the provisions of the Code applicable to the licensed premises have been complied with.  The provisions of section 4-4(2) of the Liquor Control Act (235 ILCS 5/4-4(2) (West 2010)) also granted a local liquor control commissioner the authority to authorize law enforcement officers to, "at any time," enter upon any premises licensed to sell liquor to determine if any provisions of the Liquor Control Act or any rules or regulations adopted by the commissioner have been, or are being, violated.

¶ 21    In this case, the first and second criteria set forth in *Burger* are not in dispute.  There is a substantial governmental interest in regulating the sale of intoxicating liquor (*Berzanskis*, 47 Ill. 2d at 397-98), and the warrantless search of premises where liquor is sold is arguably necessary to protect the safety of the public from the dangers attendant to the sale of intoxicating liquor. However, we find that the municipal ordinance and statute authorizing the warrantless search of premises licensed to sell liquor which were in effect when the plaintiff's premises was searched failed to satisfy the third criteria for reasonableness identified by the Supreme Court in *Burger,* as neither placed a limit on the timing of an administrative search.  See *Hansen v. Illinois Racing Board*, 179 Ill. App. 3d 353, 359 (1989).  Therefore, we conclude, as did the circuit court, that the provisions of both section 4-4-290 of the Code and section 4-4(2) of the Liquor Control Act

in effect when the plaintiff's premises was searched failed to satisfy the reasonableness requirement for a search under the fourth amendment.

¶ 22    We are not unmindful of the fact that section 4-4-290 of the Code has been amended to limit the inspecting officer's right of entry to "reasonable times" as defined in the Code (Chicago Municipal Code § 4-4-290 (added May 9, 2012)).  However, the issue of whether a warrantless administrative search conducted pursuant to a regulatory ordinance or statute satisfies the reasonableness requirement of the fourth amendment must be judged based upon the provisions of that ordinance or statute on the date of the search, not based upon the provisions of the ordinance or statute as amended at some later date.

¶ 23    Having determined that the municipal ordinance and State statute in effect on the date that the plaintiff's premises was searched which authorized warrantless searches of premises licensed for the sale of liquor failed to satisfy the reasonableness requirement of the fourth amendment, we next address the issue of whether the evidence recovered as a result of that search should have been suppressed in the underlying administrative proceedings.

¶ 24    The plaintiff argues that the circuit court erred in refusing to suppress the evidence obtained as a result of the unlawful search of its premises, contending that the circuit court "failed to give adequate consideration to several factors in applying the balancing test [applicable to a determination of whether the exclusionary rule should apply in an administrative hearing] and overlooked the trend of applying the exclusionary rule in proceedings related to punishment of liquor licensees."  According to the plaintiff, application of the exclusionary rule and suppression of the evidence obtained during the warrantless search of its premises is necessary to deter future "deviant behavior" on the part of the police.  Relying upon the reasoning of the Rhode Island Supreme Court in *Board of License Commissioners of the Town of Tiverton v.*

*Pastore*, 463 A.2d 161, 166 (1983) and the New York Court of Appeals in *Finn's Liquor Shop, Inc. v. State Liquor Authority*, 24 N.Y.2d 647, 653-55 (1969), the plaintiff argues that evidence obtained as the result of an illegal search should not be admissible in an administrative hearing in which the forfeiture of a liquor license is sought. It maintains that suppression of unlawfully obtained evidence in such proceedings is the only available way to deter the police from conducting future unlawful warrantless searches and using the evidence discovered against their targeted victim. It also contends that the evidence discovered as a result of the search of its premises should have been suppressed because "the search conducted was an egregious violation of the Fourth Amendment[,]" exceeding even the scope of a search authorized under the then existing provisions of section 4-4-290 of the Code. According to the plaintiff, its liquor license was specifically issued for the first floor of the property at 5901 South State Street, and as such, section 4-4-290 only authorized a warrantless search of the first floor, not the second floor where Officer Golucki discovered the bullet "that prompted the officers to look further and insist upon searching the safe in a non-retail area of the first floor, and to search a non-licensed premises on the second floor." We are not persuaded.

¶ 25    Although the fourth amendment prohibits unreasonable searches and seizures, it does not provide that evidence procured in violation of the proscription is inadmissible in either a criminal prosecution or a civil proceeding. The use of evidence obtained in violation of the fourth amendment does not itself violate the Constitution. *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 362 (1998). However, in order to deter illegal searches and seizures, the Supreme Court created the exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 347 (1974). Under the rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *Id.*

"Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Id*. at 348.

¶ 26    In *United States v. Janis*, 428 U.S. 433, 453-54 (1976), the Supreme Court set forth a balancing test for determining the types of non-criminal proceedings in which application of the exclusionary rule is appropriate.    Under that test, the likely social benefits of excluding unlawfully seized evidence must be weighed against the likely costs of its exclusion.    *Id.*; see also *Scott*, 524 U.S. at 363; *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1041 (1984).

¶ 27    The Supreme Court has consistently declined to extend the exclusionary rule to proceedings other than criminal trials.    See *Scott*, 524 U.S. at 365 (parole revocation proceedings); *Lopez-Mendoza*, 468 U.S. at 1050 (deportation proceedings); *Janis*, 428 U.S. at 447-48 (civil tax proceedings); *Stone v. Powell*, 428 U.S. 465, 493-94 (1976) (*habeas corpus* proceeding); *Calandra*, 414 U.S. at 343-46 (grand jury proceedings).    In each of the cases in which the Supreme Court determined that the exclusionary rule did not bar the introduction of unconstitutionally obtained evidence in the civil or administrative proceeding at issue, the Supreme Court weighed the likely benefits of excluding unlawfully seized evidence against the likely costs of its exclusion and determined that application of the rule would not result in appreciable deterrence of future official misconduct.    See *Scott*, 524 U.S. at 363-65.    The reviewing courts of this State have also declined to extend the exclusionary rule to a number of non-criminal proceedings.    See *People v. Dowery*, 62 Ill. 2d 200, 208 (1975) (probation revocation proceeding); *U.S. Residential Management and Development, LLC v. Head*, 397 Ill. App. 3d 156, 160-63 (2009) (forcible entry and detainer action); *McCullough v. Knight*, 293 Ill.

- 12 -

App. 3d 591, 597-98 (1997) (vehicle impoundment proceeding); *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 201-02 (1993) (administrative discharge proceeding). Each of these cases was resolved by balancing the benefits of excluding unlawfully seized evidence against the likely costs of its exclusion. *Dowery*, 62 Ill. 2d at 204-06; *U.S. Residential Management and Development*, 397 Ill. App. 3d at 161-63; *McCullough*, 293 Ill. App. 3d at 597-98; *Grames*, 254 Ill. App. 3d at 201-02.

¶ 28    The benefit derived from the application of the exclusionary rule "is to deter future unlawful police conduct." *Calandra*, 414 U.S. at 347. However, the record in this case reveals that the evidence at issue was suppressed in the criminal proceeding brought against Carlos, and as a consequence, the deterrence of future police misconduct was reduced. See *Janis*, 428 U.S. at 448.

¶ 29    In addition, the "deterrence rationale loses much of its force" when, as in this case, the actions of the police in conducting a warrantless search was objectively reasonable based on a good-faith reliance upon the then existing ordinance. *Davis v. United States*, 564 U.S. 229, 238, (2011); *Illinois v. Krull*, 480 U.S. 340, 349-53 (1987). At the time of the search of the plaintiff's premises, the municipal ordinance and the State statute authorizing the warrantless search of a licensed premise had not been declared unconstitutional and were, therefore, entitled to a presumption of validity. As for the scope of the search, the evidence established that the stairway leading to the second floor was easily accessed from the first floor and documents relating to the operation of the first-floor store were found in the second-floor office as was a safe adapted to transmit money to, and from, the cash register area on the first floor. We conclude, therefore, that the officers could have reasonably believed that the second floor of the plaintiff's premises was subject to a warrantless search. See *Daley v. El Flanboyan Corporation*,

- 13 -

321 Ill. App. 3d 68, 73-74 (2001). We find nothing in the record before us to support an inference that the warrantless search of the plaintiff's premises was based upon anything other than a good faith reliance upon section 4-4-290 of the Code and section 4-4(2) of the Liquor Control Act.

¶ 30    On the cost side of the balance is the obvious effect that application of the exclusionary rule would have on the truth-seeking function of the LLCC in this case. On the date that the plaintiff's premises was searched, the possession of firearms in a place licensed to sell intoxicating beverages was a violation of both section 24-1(a)(8) of the Criminal Code of 1961 (720 ILCS 5/24-1(a)(8) (West 2010)) and section 4-60-141(a) of the Code (Chicago Municipal Code § 4-60-141(a) (added May 17, 1995)). Application of the exclusionary rule would have prohibited the LLCC from considering evidence of illegal activity and hampered the City's efforts to protect the public from the dangers attendant to the existence of guns in, or about, an establishment where liquor is sold.

¶ 31    Balancing the diminished deterrence that application of the exclusionary rule in this case would have had on future police misconduct against the significant social costs that exclusion of the evidence obtained by the search of the plaintiff's premises would have had on the City's efforts to protect the public from the obvious danger of mixing firearms and liquor, we agree with the circuit court's conclusion that the exclusionary rule should not have been applied in the instant case.

¶ 32    As a final issue, the plaintiff argues that the circuit court erred in denying its motion to supplement the administrative record with a copy of its liquor license reflecting that the license was issued for the sale of liquor on first floor of the premises at 5901 South State Street. However, the defendants have never denied that the license was issued for the first floor and

admitted that fact in their brief. Consequently, if there was any error in the denial of the plaintiff's motion to supplement the administrative record, the error was harmless.

¶ 33    Based upon the foregoing analysis, we affirm the judgment of the circuit court which affirmed the decision of the LAC.

¶ 34    Affirmed.