*In re* N.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. N.W., a Minor, Respondent-Appellant).

First District (6th Division)   No. 1—96—4162

Opinion filed December 12, 1997.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

On August 31, 1995, respondent N.W. (then 13 years old) was adjudicated delinquent for having committed aggravated criminal sexual assault against a nine-year-old boy. Respondent was placed on probation for two years with the condition that he reside in a secure juvenile facility. On August 14, 1996, a petition for violation of probation by respondent was filed, based upon two incidents of fighting at his Wisconsin residential treatment facility. Following a hearing, respondent was found in violation of probation and committed to the Illinois Department of Corrections. On appeal, respondent contends that the trial court erred in allowing the State to introduce into evidence incident reports from the facility under the "business records" exception to the hearsay rule. He argues that no foundation was laid for these reports and that the reports would have been inadmissible because they were prepared in anticipation of litigation or discipline and therefore did not qualify under the business records exception. He also argues that the judgment must be reversed because the reports constituted the only evidence that he violated probation.

The petition for violation of probation alleged that on July 14, 1996, respondent struck another facility resident in the face with his fist, knocking off the resident's glasses and cutting the resident's nose. The petition also alleged that on August 5, 1996, respondent initiated a fight with another facility resident.

Prior to the start of the hearing, the State represented that it would be proceeding with the introduction of the facility's documents under the business records exception to the hearsay rule. Respondent's counsel objected, stating that the source of these statements was not identified. He also contended that the relationship of the persons making the reports describing the incidents to the source of the statements was not indicated. The trial court overruled the objection and concluded that it had been "[t]he court's practice basically over the last 11 years that the reports from probation officers are business records received in the ordinary course of their duty."

Cook County probation officer Mark Dean-Myrda testified that he was the supervising probation officer in charge of respondent. He stated that because respondent's original probation officer was no

longer in the office and respondent was in placement, it was routine practice for a supervisor to oversee his case. During the course of this supervision, he received numerous reports from the facility detailing respondent's progress, and he spoke with various members of the facility's staff regarding respondent's progress. The written reports included routine treatment and progress reports, as well as "unusual incident reports," which detail a major rule violation.

In early August 1996, Dean-Myrda received by mail in the normal course of business, an "unusual incident report" pertaining to respondent (State's exhibit No. 1) from Phyllis Nettlesheim at the facility. This three-page report, dated July 14, 1996, was authored by Jean Nicholas Glaser. The report detailed a fight involving respondent. Dean-Myrda was familiar with Phyllis Nettlesheim, the current primary therapist for N.W., as well as his previous primary care therapist. When respondent's counsel objected that no foundation had been laid for the admission of the record, the trial court held:

> "I believe that the recipient of a record in the normal course of business who maintains that in the normal course of business provides to serve a foundation to enter that record. I think the fact that the probation officer has testified that that's part of his job to receive these reports and maintains them when he has on his caseload a minor who is on probation. And that he has familiarity with the facility himself and at least a couple of their staff. This comes in as an exception to the hearsay rule because with business records there is a belief to be sufficient of right.
>
> I do not believe that there is much doubt that this is a record that came from [the facility]. I don't believe it's forged. And based on that, I am going to admit it. The weight that I give it is a different matter, but I do think it's admissible and I will admit it."

The assistant State's Attorney then offered a second incident report (State's exhibit No. 2) from the facility concerning respondent. The August 5, 1996, report was prepared by staff member Brian Binder. This report was received by Dean-Myrda in the same manner as the previous report. Over the same defense objection, the report was admitted into evidence.

The State also introduced a physical intervention report (State's exhibit No. 3) dated August 6, 1996, received from Bradley R. Block, a caseworker at the facility. Dean-Myrda received this report in a similar manner in which he received the other reports. Again, over defense objection, the report was admitted into evidence. None of these exhibits are included in the record on appeal.

On cross-examination, Dean-Myrda stated that none of the documents from the facility were prepared by anyone in the probation

department who had personal knowledge or actually saw the events reflected in these reports. Dean-Myrda admitted that he did not have personal knowledge of who wrote these reports or of the events contained in the reports. Additionally, Dean-Myrda had no personal knowledge of the manner in which the facility kept its records.

After a motion for a directed finding was denied, respondent testified that following a baseball game on July 14, 1996, a person named Andrew kicked him and respondent then hit Andrew in the face. Respondent testified that as they were packing up their baseball equipment, Andrew became upset and kicked him, so he struck Andrew. Respondent further stated that he struck Andrew, the facility resident because

"at the time *** he caught me off guard because when I was going to put my glove down, he kicked me."

Respondent testified that he could not remember anything unusual happening on August 5, 1996, when he was in the cafeteria for dinner.

After hearing the evidence, the trial court reviewed the State's exhibits admitted into evidence. State's exhibit No. 1 indicated that on July 14, 1996, respondent struck a person in the face and also slammed another resident into a wall. After facility staff witnessed the punch, respondent was immediately removed from the scene. The trial court found this evidence sufficient to support the first allegation that respondent did not comply with the facility's rules, because he initiated a fight with another resident.

The court next found that State's exhibit No. 2 indicated that on August 5, 1996, respondent started a fight in the lunchroom. The court found this evidence sufficient to support the second allegation that respondent failed to comply with the facility's rules by engaging in physical fights, which are clearly not part of the facility's program.

At the dispositional hearing, the probation officer indicated that respondent, who was 15 years old, was recently expelled from the facility and transferred to the Department of Corrections because of his violent behavior toward others in the program. The trial court committed respondent to the Department of Corrections with the recommendation that he be referred to a new sex offender treatment program.

On appeal, respondent contends that the trial court erred in allowing the State to introduce into evidence the facility's incident reports under the business records exception to the hearsay rule. He argues that no foundation was laid for these reports and that, even if a foundation had been properly laid, they would have been inadmissible because they were prepared in anticipation of litigation and/or

discipline and therefore did not qualify under the business records exception.

■ Initially, we note that these reports are not included in the record on appeal. It is the duty of the appellant to provide all documentation pertinent to issues raised on appeal supporting the claim of error, and in the absence of such record, it is presumed that the trial court's judgment conformed to the law and had a sufficient factual basis. *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 360, 630 N.E.2d 121 (1994). Without these reports, it is difficult to determine exactly what the trial court relied upon in making its determination, and we may presume that the trial court's ruling was correct. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 393-94, 459 N.E.2d 958 (1984). However, we choose to address the merits of this issue and find reversible error.

Like other evidentiary rulings, the decision of whether to admit business records is within the sound discretion of the trial court, and such determination will not be reversed absent an abuse of that discretion. *People v. Morrow*, 256 Ill. App. 3d 392, 396, 628 N.E.2d 550 (1993). For example, in *People v. Turner*, 233 Ill. App. 3d 449, 455, 599 N.E.2d 104 (1992), a computer printout of periodic imprisonment records was held to be admissible during the defendant's probation revocation hearing both as an official record and as a business record. In *People v. Walsh*, 273 Ill. App. 3d 453, 652 N.E.2d 1102 (1995), a probation officer was allowed to testify at a probation revocation hearing based on the restitution ledger maintained by the probation department.

■ In a criminal proceeding, the foundation requirements for admission of a writing or record under the business records exception are that: (1) the writing or record was made as a memorandum or record of the act, transaction, occurrence or event; (2) it was made in the regular course of business; and (3) it was the regular course of the business to make such record at the time of such transaction or within a reasonable time thereafter. In contrast, records are inadmissible if they were, "made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind." 725 ILCS 5/115—5(c)(2) (West 1994); *People v. Tsombanidis*, 235 Ill. App. 3d 823, 835, 601 N.E.2d 1124 (1992); 725 ILCS 5/115—5(a) (West 1992). The credibility of a business record depends upon the regular, prompt, and systematic nature of the entry and the fact that it is relied on in the operation of the business. *People v. Tsombanidis*, 235 Ill. App. 3d at 835.

At the revocation hearing, respondent made no objection that the investigative reports were prepared in anticipation of litigation

and/or discipline. Instead, respondent objected solely on the grounds that the State failed to establish an adequate foundation supporting the reliability of the records. Normally, objecting to the admissibility of evidence on one basis waives consideration of its admissibility on another basis. *People v. Canaday*, 49 Ill. 2d 416, 423-24, 275 N.E.2d 356 (1971). Had respondent specifically objected that the reports were prepared in anticipation of pending discipline, the State and the trial court could have addressed this issue, but respondent did not. Our review in this regard is rendered more difficult because the exhibits are not in the record, but we shall consider whether there was an adequate foundation to admit the incident reports under the business records exception to the hearsay rule.

■ At a probation revocation hearing, the State has the burden of going forward with the evidence and proving the violation of probation by a preponderance of the evidence while using only competent evidence. 730 ILCS 5/5—6—4(c) (West 1994); *People v. Bedenkop*, 252 Ill. App. 3d 419, 422, 625 N.E.2d 123 (1993). A trial court's ruling on a petition to revoke probation will not be disturbed on appeal unless it is against the manifest weight of the evidence. *People v. Davis*, 216 Ill. App. 3d 884, 888, 576 N.E.2d 510 (1991).

Hearsay evidence is not competent evidence in probation revocation proceedings (*In re McMillan*, 51 Ill. App. 3d 940, 945, 367 N.E.2d 494 (1977); *People v. Wilson*, 44 Ill. App. 3d 15, 17, 357 N.E.2d 842 (1976)); therefore, hearsay testimony is not competent to sustain the State's burden of proof, at least over defendant's objection. *People v. White*, 33 Ill. App. 3d 523, 528, 338 N.E.2d 81 (1975); *People v. Lewis*, 28 Ill. App. 3d 777, 781, 329 N.E.2d 390 (1975).

■ On its face, the facility incident reports appear to fall within the broad scope of the business records exception (725 ILCS 5/115—5(a) (West 1994); 134 Ill. 2d R. 236(a)), because the department of probation is required to prepare and keep such incident reports. However, *People v. Smith*, 141 Ill. 2d 40, 73, 565 N.E.2d 900 (1990), holds that prison incident reports are not admissible under the business records exception to the hearsay rule when offered to prove the truth of the disciplinary infractions or confrontations between prison employees or law enforcement personnel or prison inmates. The trial court in *People v. Smith* refused to admit the contents of prison incident reports during the guilt phase of the trial. The supreme court held that, under section 115—5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—5(a) (West 1994)), the reports were found to be documented generally with an eye toward some form of subsequent discipline and created a serious concern regarding defendant's right to confront the witnesses against him. *People v.*

*Smith*, 141 Ill. 2d 40, 72, 76-79. The supreme court held that prison incident reports lacked "the necessary earmarks of trustworthiness and reliability generally attendant to regularly kept business records." *People v. Smith*, 141 Ill. 2d at 73. The supreme court also found it of little consequence that the department was required by statute to keep such reports. *People v. Smith*, 141 Ill. 2d at 74.

We also acknowledge that the Illinois Supreme Court in *People v. Ward*, 154 Ill. 2d 272, 328-29, 611 N.E.2d 590 (1992), held that *People v. Smith* does not preclude the State from introducing prison incident reports into evidence during the aggravation stage of a sentencing hearing. See also *People v. Westbrook*, 262 Ill. App. 3d 836, 857-58, 635 N.E.2d 398 (1992). But the challenged records here were used as substantive evidence to prove the State's case. Based upon the record before us, the probation supervisor's testimony was not sufficient under *People v. Smith* to establish the necessary indication of trustworthiness and reliability necessary to satisfy the underlying purpose of the business records exception.

Based upon *People v. Smith*, we find that the incident reports were inadmissible hearsay and improperly admitted. Since no other competent evidence was introduced by the State to sustain its burden of proof, the admission of the incident reports constitutes reversible error.

Accordingly, the trial court abused its discretion in admitting the incident reports and the cause must be remanded for a new probation revocation hearing.

Reversed and remanded.

GREIMAN, P.J., and QUINN, J., concur.