*In re* V.T. III, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. V.T. III, Respondent-Appellant).

Second District    No. 2—98—0371

Opinion filed August 3, 1999.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Roger T. Russell, State's Attorney, of Belvidere (Martin P. Moltz and Peggy F.J. Bradford, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

The circuit court of Boone County placed the 14-year-old respondent, V.T. III, on probation after a delinquency proceeding. The State filed a petition to revoke probation after respondent allegedly violated the terms of his probation by leaving a residential treatment facility, Aunt Martha's Youth Service Center (the facility), before he completed a drug and alcohol evaluation. After admitting an "Unusual Incident Report" (the report), which described respondent's flight from the facility, the trial court revoked respondent's probation.

On appeal, respondent contends that section 115—5(c)(2) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—5(c)(2) (West 1998)) prohibited the trial court from admitting the report under the business record exception to the hearsay rule because the report was prepared in anticipation of litigation. We disagree, and we affirm the trial court's order revoking respondent's probation and committing him to the juvenile division of the Department of Corrections.

A petition for adjudication of wardship filed on December 3, 1997, charged respondent with being a delinquent minor for possessing between 10 to 30 grams of cannabis with the intent to deliver (720 ILCS 550/5(c) (West 1996); 705 ILCS 405/5—3(1) (West 1996)). On December 29, 1997, the trial court placed respondent on probation after he admitted the allegations. As a requirement of probation, respondent was to undergo drug and alcohol counseling at the facility.

The State filed a petition to revoke probation, alleging that respondent failed to complete the counseling program after leaving the facility without permission. At the probation revocation hearing, a case manager from the facility, Nicole Rogers, testified that she admitted respondent to the facility on January 26, 1998. Respondent was required to remain at the facility and participate in the program for at least 45 days.

While testifying, Rogers identified the report that was prepared after respondent fled the facility. She explained that such a report is prepared when a child assigned to the facility fails to take prescribed medication, runs away from the facility, or attacks someone in the facility. A staff member who witnesses the incident prepares the report and forwards it to Rogers and to the child's supervisor. Rogers further testified that such a report is prepared at the time of the incident and kept in the facility's regular course of business. Rogers admitted that she did not prepare the report and did not have personal knowledge of respondent's departure from the facility.

Our review of the report also reveals that the facility prepares incident reports when a child is injured, suffers from an illness, or

misses school. Although he did not testify, Joe Huey was the staff member who prepared the report in this case.

The trial court admitted the report pursuant to the business record exception to the hearsay rule (725 ILCS 5/115—5(a) (West 1998)). The report reveals that on January 28, 1998, respondent asked to go outside. Earlier that day, Huey saw respondent making a phone call and shortly thereafter saw a red car drive past the facility several times. Huey concluded that respondent called for a ride and left the facility without permission. Huey also recommended filing a missing person's report with the police as a follow-up measure. Respondent never returned to the facility.

The trial court revoked respondent's probation and denied his motion to reconsider, noting that the report, by itself, sufficiently proved that respondent willfully violated his probation. The trial court concluded that the report was not prepared for litigation but merely documented whether respondent was present at the facility. Respondent's timely appeal followed.

On appeal, respondent contends that the trial court's admission of the report warrants reversal. We disagree. The decision of whether to admit a business record is within the trial court's discretion, and we will not reverse such a determination absent an abuse of that discretion. *In re N.W.*, 293 Ill. App. 3d 794, 798 (1997). At a probation revocation hearing, the State has the burden of proving a probation violation by a preponderance of the evidence. *In re N.W.*, 293 Ill. App. 3d at 799. We conclude that the trial court did not abuse its discretion in admitting the report, and we decline to reverse the trial court's order because it was not against the manifest weight of the evidence. See *In re N.W.*, 293 Ill. App. 3d at 799.

Furthermore, the qualitative difference between a criminal prosecution and a revocation of probation allowed the trial court greater discretion in determining whether to admit the report in this case. See *People v. Kruszyna*, 245 Ill. App. 3d 977, 980 (1993). Although respondent was entitled to due process of law, it is well established that only "minimum requirements" of due process need to be followed at a probation revocation hearing. See *Kruszyna*, 245 Ill. App. 3d at 980. A probation revocation hearing is not a proceeding in which guilt or innocence is determined; rather, " '[i]t takes place only after the defendant has already been convicted, sentenced to probation, and then has violated the conditions of the probation.' " *Kruszyna*, 245 Ill. App. 3d at 980-81, quoting *People v. Allegri*, 109 Ill. 2d 309, 313 (1985). We conclude that the trial court's admission of the report at the probation revocation hearing did not deprive respondent of the minimum due process protection to which he was entitled.

■ In *In re N.W.*, 293 Ill. App. 3d 794 (1997), the reviewing court set forth the foundational requirements for the admission of a document pursuant to the business records exception. The writing must be made as a memorandum or record of the event, and the writing must be made in the regular course of business at the time of the event or within a reasonable time thereafter. *In re N.W.*, 293 Ill. App. 3d at 798.

The probation officer in that case admitted that he did not have personal knowledge of (1) the source of the reports, (2) the events described in the reports, or (3) how the youth residential facility kept its records. *In re N.W.*, 293 Ill. App. 3d at 797. The reviewing court concluded that the reports were inadmissible, in part, because the State failed to lay a proper foundation. *In re N.W.*, 293 Ill. App. 3d at 799-80.

To establish a proper foundation for the admission of a business record, the author of the record need not testify or be shown to be unavailable. *People v. Virgin*, 302 Ill. App. 3d 438, 449-50 (1998). Anyone familiar with the business and its procedures may testify about how the business record was prepared. *Virgin*, 302 Ill. App. 3d at 450.

■ In the present case, the State established a proper foundation. Although Rogers had no personal knowledge of respondent's escape, she testified that an unusual incident report is prepared when, among other events, one of the children assigned to the facility fails to take medication, runs away, or attacks others. A staff member who witnesses the event prepares the report and delivers it to the child's supervisor. Rogers explained that she also receives copies of these reports and that the facility prepares them in the regular course of business.

Respondent argues that, even if the report qualifies as a business record and a proper foundation is established, it is nevertheless inadmissible because its purpose was improper. In a criminal proceeding, a business record is inadmissible if it was " 'made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind.' " *In re N.W.*, 293 Ill. App. 3d at 798, quoting 725 ILCS 5/115—5(c)(2) (West 1994). The *N.W.* court emphasized that the record it reviewed failed to establish the "trustworthiness and reliability necessary to satisfy the underlying purpose of the business records exception" (*In re N.W.*, 293 Ill. App. 3d at 800), and seemed concerned that the reports were part of an ongoing investigation concerning the minor in that case.

Our supreme court has concluded that "prison incident reports" are prepared for litigation and are inadmissible. *People v. Smith*, 141 Ill. 2d 40, 73 (1990). Because they are designed to record disciplinary infractions, the prison reports "lack the necessary earmarks of

trustworthiness and reliability generally attendant to regularly kept business records." *Smith*, 141 Ill. 2d at 73. The *Smith* court noted that prison incident reports, like police reports, are "made with an eye toward some form of subsequent discipline." *Smith*, 141 Ill. 2d at 73.

The report and its use in this case can be distinguished from the series of reports in the *N.W.* case and prison incident reports in general. Initially, a review of the record clearly indicates that the report was not prepared in anticipation of future discipline. After respondent left, the facility granted him a 14-day extension to return and complete the program. The facility formally discharged respondent only after he failed to return during that period.

The report in this case is also more reliable than the prison incident reports excluded in *Smith*. This report was prepared by a facility staff member and not by a law enforcement officer. The report was prepared shortly after respondent left the facility. Based on his observations, Huey reasonably concluded that respondent left without permission. The information contained in the report does not call into question the motivation, recall, or the soundness of the conclusions of the report's author. *Cf. Smith*, 141 Ill. 2d at 73.

In *Smith*, the court noted that prison incident reports are unreliable because confrontations between prison employees and inmates often give rise to civil rights litigation against the employees, and it can be assumed that the employees prepare their reports with this in mind. *Smith*, 141 Ill. 2d at 73 (a report should be excluded when the author has a "fairly positive counter motive to misrepresent"). Nothing suggests that the employees of a youth residential treatment facility contemplate similar retaliatory litigation, especially when this type of report is a standardized form used to document the health and safety of a minor.

Therefore, we conclude that the trial court did not abuse its discretion in admitting the report in this case because it was not prepared in anticipation of future discipline or litigation which would remove it from the business record exception to the hearsay rule. The report merely described how respondent left the facility, and it recommended that a missing persons report be filed. The facility also allowed respondent an opportunity to return and complete the counseling program.

For the foregoing reasons, the order of the circuit court of Boone County is affirmed.

Affirmed.

BOWMAN, P.J., and INGLIS, J., concur.